# THE TOWN OF LEMONT *et al.*

## *v.*

# THE SINGER AND TALCOTT STONE COMPANY *et al.*

*Filed at Ottawa November 20, 1880—Rehearing denied March Term, 1881.*

1. TAXATION—*enjoining collection of taxes—upon what grounds, generally.* A court of equity will enjoin the collection of a tax when it has been levied on property exempt from taxation, or the same has been imposed when the law has not authorized it to be levied, or when it has been imposed by persons not empowered to levy it, or where it has been levied by persons authorized to levy it but they have exceeded the amount the law authorizes, or when fraud is clearly shown in fixing the valuation of property for taxation.

2. SAME—*when it is proposed to apply the money for an illegal purpose.* But where a tax is levied for a proper purpose by persons empowered to impose it, and it does not exceed the amount or rate allowed by law, its collection will never be restrained because there may be a threat to use it for an unauthorized or illegal purpose. When collected, if any attempt is made to pervert it to an illegal purpose, then equity will interfere and prevent the misappropriation.

3. SAME—*as to claims improperly allowed by town auditors—and herein, of the power of a court of chancery to revise the acts of town authorities.* Where town auditors audit and allow claims against the town and they are certified and presented to the town meeting, where they are discussed and approved by the voters, and a tax voted sufficient to pay them, and a further sum sufficient to defray the current expenses of the town, it will be presumed that there was no fraud in allowing such claims, although some of them may have been illegal and not allowable by law, and such tax will not be enjoined, if the tax is not in excess of that authorized to be levied and collected.

4. A court of equity is not invested with jurisdiction to conduct the affairs of a township, or to supervise and control the action of its officers, or the people, so long as they confine themselves to the powers conferred by statute, though such action may be unwise and not for the best interests of the people of the township.

5. SAME—*allowance of interest by town auditors for labor on roads—as evidence of fraud.* The granting of certificates by town auditors for indebtedness for labor on roads, drawing interest, and afterwards taking them up, adding the interest to the principal and giving new certificates for the whole amount drawing interest, thus making the town pay compound interest, is illegal, as there is no law authorizing even simple interest, but it does not prove fraud, so as to authorize the court to enjoin the collection of the tax levied to pay such certificates.

6. SAME—*mismanagement of town funds—effect upon claims of creditors of the town.* The fact that large sums were collected in previous years, amply sufficient to have paid all the town charges and claims allowed, while it shows that the town officers squandered, wasted and misappropriated the funds of the town, or appropriated the same to their own use, is not sufficient to prove that the claims allowed were fraudulent, especially when the town meeting has approved the same and voted a tax to pay them.

7. The fact that school directors, in negotiating bonds issued to raise funds to build a school house, and in the care and use of the money, may have shown great negligence if not recklessness in respect to the interests of the district, and may have lost or squandered part of the funds so raised, affords no ground whatever for enjoining the collection of a tax to pay the interest on such bonds. The holders of the bonds are not responsible for the misconduct of such officers.

8. SAME—*allowance for time in assessing property.* The allowance of bills for assessing the taxable property of the town for each of two months for nearly double the number of days they contain, by no means proves that such claims were fraudulently allowed. Such allowance may have been made under a mistaken and unwarranted view of the law,—that eight hours was a day's work, in respect to officers in public employment.

9. SAME—*road and bridge tax—by whom to be levied, and to what amount.* Under the Township Organization law and Road law of 1874, the road commissioners were authorized to levy a tax of 40 cents on the $100 valuation of taxable property for roads and bridges, and if that was not thought sufficient, the town meeting was expressly authorized to levy an additional amount for that purpose, not exceeding 60 cents on the $100 valuation, and also a tax for other town purposes, and there is no limit of the per cent as to such other taxes. If the road and bridge tax exceeds six mills on the dollar, the excess will be illegal, and may be enjoined.

10. MUNICIPAL BONDS—*bonds of school district—presumption of their legality.*
Where bonds of a school district, negotiated in the market to raise money
to build a school house, recite that they have been issued in pursuance of a
vote of the district legally had, and they are in the hands of innocent hold-
ers, it must be presumed that they are legal and that their issue was author-
ized by a legal vote, until the contrary is shown by clear and satisfactory
evidence.

11. SAME—*burden of proof.* In a suit to enjoin the collection of a tax to
pay bonds issued by a school district, fair on their face and sold to innocent
purchasers, and the interest thereon, the burden of proof is on the district
to overcome the presumption of the legality of the bonds. In *mandamus* to
compel the district to issue the bonds, the burden of proof would be shifted
to the other side.

WRIT OF ERROR to the Appellate Court for the First Dis-
trict;—heard in that court on appeal from the Circuit Court
of Cook county; the Hon. W. W. FARWELL, Judge, pre-
siding.

Messrs. LEAMING & THOMPSON, and Mr. H. C. IRISH, for
the plaintiffs in error:

A court of equity will not interfere by injunction, to pre-
vent the collection of a tax, unless the property is exempt
from taxation, or where the assessment is fraudulently made,
or where the tax is for an illegal purpose, and then only for
the illegal part where it is certain and ascertained,—or where
persons have assumed the power to impose a tax where the
law confers no such power,—and even in such cases there
must be special reasons for the interposition of the court to
restrain the collection. *DuPage County* v. *Jenks,* 65 Ill. 277;
*Munson* v. *Miller,* 66 id. 380; *Merritt* v. *Farris,* 22 id. 303;
*Cook County* v. *Chicago, Rock Island and Quincy R. R. Co.*
35 id. 460; *McBride* v. *Chicago,* 22 id. 574; *Metz* v. *Anderson,*
23 id. 463; *Swinney* v. *Bean,* 71 id. 31; *Chicago, Burlington
and Quincy R. R. Co.* v. *Cole,* 75 id. 591; *Chicago, Burling-
ton and Quincy R. R. Co.* v. *Frary,* 22 id. 34; *Ottawa Glass
Co.* v. *McCaleb,* 81 id. 562; Cooley on Taxation, 536.

The injury must be irreparable, or such as only a court of
equity can relieve. *Porter* v. *Rock Island and·St. Louis R. R.*

*Co.* 76 Ill. 561; *Chicago, Burlington and Quincy R. R. Co.* v. *Siders,* 83 id. 320.

Under the provisions of section 191, of the Revenue act, adopted in 1872 and amended in 1873, mere error or informality will not vitiate, or in any manner affect the tax, or the assessment thereof. *Thatcher* v. *The People,* 79 Ill. 597; *Buck* v. *The People,* 78 id. 560; *Beers* v. *The People,* 83 id. 488.

The presumption of law is in favor of the legality of the tax, and the burden of proof is upon complainants to show that these taxes are illegal, and if in part only, then to show what portion is illegal. *Munson* v. *Miller,* 66 Ill. 380; *Buck* v. *The People,* 78·id. 560; *Beers* v. *The People,* 83 id. 488; *Thatcher* v. *The People,* 79 id. 603; *Ottawa Glass Co.* v. *McCaleb,* 81 id. 562.

For all of the indebtedness, both town and school, incurred prior to the adoption of the constitution of 1870, there exists the power to levy a tax until such indebtedness is paid, irrespective of the constitutional limitation as to the amount of indebtedness for municipal corporations. *County of Pope* v. *Sloan,* 92 Ill. 177.

As to the town tax: The law authorizes and requires a town tax to be imposed and collected. There is nothing in the constitution or laws of the State limiting the amount of the levy for town purposes, inconsistent with the amount levied in this case; and a court of equity has no jurisdiction to restrain its collection because it is claimed that it may be misapplied, or even that the town authorities intend to apply a portion of the funds, when collected, to the payment of illegal claims. *DuPage County* v. *Jenks,* 65 Ill. 289.

There is nothing in the record to show the amount of town tax levied to pay the highway orders, nor does it appear that such highway orders were issued for work done or ordered without authority. *Commissioners of Highways* v. *Newell,* 80 Ill. 592.

As to the school tax: The fact that some of the bonds of the district may have been issued after the constitution of

1870 came into force, the authority therefor being derived from a vote had prior to that time, will not affect the validity of the bonds, even though such bonds, taken in connection with the other debts of the district, created a corporate indebtedness exceeding five per centum of the taxable property of the municipality. *Mason* v. *City of Shawneetown,* 77 Ill. 533.

When the validity of such bonds is called in question in a collateral proceeding like this, to which the holders of the bonds are not parties, it must clearly appear that the bonds are void, to justify the court in defeating the collection of taxes to pay them. *Edwards* v. *The People,* 88 Ill. 340.

Mr. GEORGE SCOVILLE, for the defendants in error, to show the illegality of the action of the town auditors in auditing claims against their town, and also improper conduct on the part of the school officers and the highway commissioners, cited *Williams* v. *Town of Roberts,* 88 Ill. 11; *School Directors* v. *Parks,* 85 id. 338; *Clark* v. *School Directors,* 78 id. 474; *Adams* v. *State,* 82 id. 132; *Peers* v. *Board of Education,* 72 id. 508; *Campbell* v. *State.* 41 id. 454; *Perry* v. *Kinnear,* 42 id. 160; *Beauchamp* v. *Kankakee County,* 45 id. 274; *Viley* v. *Thompson,* 44 id. 13; *Glidden* v. *Hopkins,* 47 id. 525; *School Directors* v. *Sippy,* 54 id. 287.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This bill was filed by the Singer & Talcott Stone Company, and a number of other tax payers, to enjoin a tax levied by the town of Lemont for the payment of indebtedness owing by the town, and to defray current expenses for the year, amounting in the aggregate to $8000. Also a school tax levied to pay the accruing expenses of schools, and to pay bonded indebtedness of the district, aggregating $10,000. These taxes were imposed for the year 1874.

On a hearing the circuit court enjoined the entire town tax, and seven-tenths of the school tax as assessed against

complainants.  The case was removed to the Appellate Court where the decree was affirmed, and the case is brought to this court and errors are assigned on the record.

It is claimed that the town tax was levied to pay indebtedness that was not sanctioned by law, and the bonds issued to aid in building the school house were not authorized by a vote of the district, and not being thus authorized, they were issued without authority, and are void, even in the hands of innocent holders.

It is claimed that the town auditors allowed charges for labor never performed, services never rendered or materials never furnished.  In regard to all of these charges the bill asked the court below to re-examine each charge and re-audit each claim allowed by the auditors.  The items of indebtedness had been presented to and allowed by the proper officers elected by the people to perform that duty.  Not only so, but the claims thus allowed and so certified were presented to the town meeting, discussed and approved by the voters present, and when thus approved, the meeting voted the levy of a tax for an amount sufficient to pay the indebtedness, and a further sum sufficient to defray the current expenses of the town. The auditors are officers elected by the people to perform these duties with others, and when they have so acted and their action has been reported to the town meeting, as the law requires, and that action has been approved, we must presume that there was no fraud in allowing these claims, and nothing short of clear and satisfactory evidence can overcome this presumption.

A court of equity is not invested with jurisdiction to conduct the affairs of a township, or to supervise and control the action of its officers or the people, so long as they confine themselves to the powers conferred by the statute.  So long as they keep within the powers conferred, they are amenable to no control by the courts.  It is only when they transcend their powers that a court of chancery can intervene to restrain their action.  It has no power to regulate and control their

action so long as they perform no function outside of the grant of power by the General Assembly. The courts have no right to say, that although the officers and the people have only exercised legitimate power, the action is unwise, or is not for the best interests of the people of the municipality, and the act should be restrained. That belongs alone to the officers and the people.

Here, the tax was voted by the people, and certified by the town clerk to the county clerk for extension against the taxable property of the town, as required by law. In all of this we are unable to discover any thing illegal or, in the slightest degree, irregular, and if it has been legally done, equity has no power to enjoin the tax.

It is, however, said the auditors granted certificates of indebtedness for labor on roads, drawing interest, and afterwards took these certificates up, adding the interest to the principal, and gave new certificates for the sum thus shown, drawing interest, thereby imposing upon the town the liability to pay compound interest. We know of no law which authorizes the commissioners of highways to borrow money or to pay interest on their indebtedness, much less compound interest. This was undoubtedly illegal, and was done without authority of law.

It is also said that some one or two accounts were allowed for items that could, under no circumstances, be a town charge. It may be true that the items charged could not be used by the town as a corporate body, and still such articles may have been paid to persons performing labor for the town, in lieu of money, and this explanation may have been made to the entire satisfaction of the voters composing the town meeting. At any rate, that body not only sanctioned, but they approved these charges, and voted a tax for their payment, and we can not hold that there was no legitimate explanation that should have been satisfactory, On the contrary, the presumption is that it was shown the items were legitimate.

It is urged that, inasmuch as large sums were collected in previous years, amply sufficient to have paid all of these claims, we should therefore infer that these claims are fraudulent. We do not think this evidence proves that fact. It no doubt proves that the town officers squandered, wasted and misappropriated the funds of the town, and it may even show they have appropriated town funds to their own use,— but it would not be a fair inference to hold that it proves these claims to be illegal or fraudulent, especially when it was not so found by the town meeting; but that body seems to have found to the contrary.

It is claimed, again, that the allowance of the bills for assessing the taxable property of the town for each of two months for nearly double the number of days they contain, is evidence of fraud. It may be that the auditors and voters of the town meeting construed the statute fixing eight hours as a day's work, when no other time is fixed by agreement of the parties, as applicable to officers in public employment. Whilst this construction is wholly unwarranted and inadmissible, it by no means proves fraud. It only proves that they misapprehended the true meaning of the statute.

None of these facts, or even all of them together, prove that these claims are all fraudulent. It may appear, and we think it does, that the affairs of the town were badly, if not recklessly managed, but they were performed by officers elected by the people, and indorsed and approved by the people in town meeting.

We have repeatedly said that the taxing power is more liable to abuse than any other. But at the same time we feel justified in saying, the abuse is more generally by the taxpayers themselves than by officers entrusted with the exercise of the power. This became so apparent that our present constitution has imposed a limitation on the power of municipal bodies to incur indebtedness beyond a certain amount, to prevent ruinous taxation to meet the principal and interest. These abuses are generally self-imposed, by waste, extrava-

gance or negligence of the people themselves, and when such is the fact, the courts are properly powerless to afford relief against their own acts, when legally performed. They incur the indebtedness, they derive the benefits, and must meet the obligation. It would be highly unjust and inequitable to impose the burthen on those who have performed the labor, furnished the money or materials to make the improvements they have made and enjoy.

There is a class of cases in which a court of equity does take jurisdiction to afford relief against the collection of taxes. Those cases are, where a tax has been levied on property exempt from taxation; where a tax has been imposed where the law has not authorized it to be levied; where a tax has been imposed by persons not empowered to levy it; where it is levied by persons authorized to levy it, but they have exceeded the amount the law authorizes; and when a fraud is clearly shown in fixing the valuation of property for taxation.

Was the tax levied by the town meeting for an authorized purpose? If it was not, then it is void and its collection should be enjoined. It is claimed that, as these debts were incurred for road and bridge purposes, the tax should have been levied by the road commissioners and not by the town meeting, and that it follows the town meeting had no power to levy a road tax, (as, the fund necessary to pay for labor in opening and repairing roads and bridges). If this is true, and there is no concurrent power in the town meeting to levy the tax, then it is unauthorized and void, and it is within the jurisdiction of a court of equity to restrain its collection.

But is this so? The 40th section of the township organization law, Rev. Stat. 1874, p. 1071, clause 1, paragraph 3, confers power on town meetings to raise money by taxation, "For constructing or repairing roads, bridges or causeways within the town to the extent allowed by law." Here is clear and distinct authority to levy road and bridge taxes. From the language employed there can be no question. It is too plain to admit of construction.

The question then arises, what is the extent to which a town meeting may levy taxes for such purposes, under the law as it then existed? The 120th section of the road law, Rev Stat. 932, authorizes the road commissioners to levy not exceeding 40 cents on the $100 valuation of property, and if that is thought by them not to be sufficient, the town meeting is authorized to levy an additional amount not exceeding 60 cents on the $100 of valuation.

Thus it is seen, that the town meeting is fully empowered to levy sixty cents on each one hundred dollars of valuation of taxable property, or rather a sum that shall not exceed that amount. And the electors are also, by the 40th section of the Township Organization law, authorized to levy a tax for any other purpose required by law,—and in the same section, other purposes are specified.

Section 125 defines what are town charges. They are, compensation of officers of towns; contingent expenses of the town; the moneys authorized to be raised by the vote of a town meeting for any town purpose, and every sum directed by law to be raised for any town purpose. The sections from 118 to 124 provide for the allowance of claims against the town, and the certificate of the amount allowed by the town auditors, and filing them with the town clerk for the inspection of all persons. The 115th section requires the town clerk to certify annually, at the time required by law, to the county clerk, the amount of taxes to be raised for town purposes. And there is no limit of the per cent the town may raise for town purposes, other than that for roads, bridges, etc.,—the town thus having the power to raise six mills on the dollar for roads and bridges, and a sufficient sum for other and contingent purposes.

As we understand this record, this tax was levied on a valuation of $927,599. A tax on that sum of six mills on the dollar, would produce $5,562 and a fraction. The levy, therefore, is legal to that extent as a road and bridge tax. It is also legal to the extent of the aggregate amount of

allowances, for town charges, for contingent and other expenses during the year for which the levy was made. These amount to a considerable sum, and that amount was allowed by the board of auditors and approved by the town meeting.

The town meeting had the power to levy six mills on the dollar of taxable value for roads and bridges, and because it levied more than that amount, that did not vitiate the acts performed within the power. The acts outside of and beyond the power are void, of course, and all above the sum produced by the levy of six mills on the dollar of valuation having been levied without power, it should be restrained from collection. But as six mills of this levy was imposed in pursuance of legal power at the time and in the manner required by the statute, it is collectible. Until the levy exceeds the power, or the tax is levied for an unauthorized purpose, or is levied at an unauthorized time, or in an unauthorized manner, a court of equity has no power to interfere or prevent its collection.

Equity will not review the allowance of claims passed by the town auditors and approved by the people in town meeting, on a bill to enjoin the collection of a tax properly levied and within the limits the town or its officers are empowered to impose the same. In such a case it is a proper tax for a proper purpose, and legally imposed, and there can be no grounds for restraining its collection. If the court were compelled to hear evidence and re-audit all claims allowed by the auditing board, and restrain the collection of a tax legally imposed until that was done, it would greatly embarrass these municipal bodies, and especially so, if, on a re-auditing, all of the claims were found to be properly allowed, or but a trifling amount improperly passed.

A court of chancery can not be converted into an auditing board, to hear evidence, and determine whether any item, great or small, has been properly allowed. That duty has

been imposed, by law, on another body, created for the purpose and empowered to pass on claims against the town.

If, when the tax is collected, the town officers attempt to apply it to the payment of illegal claims, then, and not till then, will the court interfere.

If a claim that under no circumstances could become a charge on the particular fund, had been allowed, it would be the duty of the officer having the disbursement of the fund to refuse payment, or, if he were determined to pay such a claim, the question would then arise, whether equity would enjoin the performance of the act.

This tax was levied for road and bridge purposes, and no one can say when it is collected it will not be applied to the repair of roads and bridges, and, if so, complainants have no right to complain. If the certificates for road labor are illegal, the town is not bound to pay them, and would have the undoubted right to expend the money for legitimate purposes, although the town meeting said the tax should be levied to pay them. If they are legal charges against the fund they should be paid. Nor is this case controlled by former decisions of this court, so far as the record discloses. It no where appears that these certificates were given for money loaned to the town or the highway commissioners. But it was, as we understand the record, for labor done and materials furnished and used on the roads and bridges after the taxes were levied to meet the expense, and if the highway commissioners appropriated the money to their own use, can that preclude the town from levying and collecting a tax to pay for the labor and materials thus received and appropriated.

It is insisted by complainants that a sufficient tax was levied and collected to pay these claims, but the highway commissioners had squandered it. There is no pretense that the holders of these certificates have been paid. Then should they be precluded from receiving what is justly due them? Surely not. All we have said in reference to the road and

bridge tax applies to taxes for current expenses, as well as taxes for other purposes.

It then follows, that the court erred in enjoining all of the tax above six mills on the dollar of valuation, levied for road and bridge purposes, and in restraining the collection of any portion of the town tax for current expenses for the year. This latter tax was clearly legally levied, for a legal purpose, at the proper time, and in the proper manner.

The question remains, however, whether the court below decided correctly in restraining the collection of seven-tenths of the tax levied to pay bonds previously issued to procure means to pay for the erection of a school building for the use of the town. It is denied that the electors ever voted authority to borrow money for the purpose, and the bonds are therefore void. All the evidence considered, we are of opinion it clearly establishes the fact that authority was voted. Two witnesses so testify, most explicitly, whilst the other witnesses are uncertain as to the fact, and declare they have no recollection that the vote was taken. This opposing evidence, if it may be said to be such, wholly fails to overcome this positive evidence.

But it is said the evidence should have been by the records of the town. We regard this a misconception. It was, we think, shown that there was another record book, which was lost and could not be produced, and a portion of the records of the school board made on loose pieces of paper that were not produced. The bonds were issued, negotiated in market and recited that they were issued in pursuance of and under the sanction of a vote legally had. The bonds being in the hands of innocent holders, the presumption must be indulged that they are legal, until that presumption is overcome by clear and satisfactory evidence. In such a case the burthen of proof is on the school district to overcome that presumption. If this was a proceeding by *mandamus* to compel the district to issue bonds, the burthen would be on the other side.

It would be wholly unreasonable and unjust to permit the people to vote to borrow money, bonds to be issued, money obtained, used in the erection of a school building, which is used and enjoyed by the people of the district, and then permit them to escape its payment simply by the destruction of the records kept by their officers, either by accident or design.

To adopt a rule that would produce such injustice, could never be tolerated by a court of justice. To so hold would be to say, you may legally borrow money, execute the bonds of the district to evidence the indebtedness, obtain and enjoy the school building, but you may escape its payment by destroying the record evidence made by your own officers and in their custody. Such is not, nor can it be the rule.

In this case, complainants have not proved the want of authority, but the defendants have proved authority. When the bonds were offered in market a purchaser had the prudence, knowing he was dealing in municipal securities and that authority to issue them depended on a compliance with the law, to consult attorneys, who, after an investigation, pronounced them legally issued. This is strong corroboration of the evidence of the two witnesses, that authority was voted to issue bonds, and that there was an entry of the fact made in the records of the proceedings of the board.

The 47th section of the school law, then in force, authorized the district to borrow money and issue bonds therefor, and limits the amount to five per cent on the assessed value of the taxable property in the district. That would seem to be about $45,000 or something upwards, and although it does not appear what amount of bonds were issued, we think there can, from the evidence, be no reasonable claim that the bonds reached, and surely did not exceed that sum. We can not see the slightest equitable grounds for enjoining this levy to pay this school indebtedness. The rate of the levy is not in excess of the per cent allowed by that section. It allows a levy of three per cent to defray the expenses of

keeping the school in operation, and a greater per cent to pay existing indebtedness.

It is urged with apparent earnestness, that the directors were wasteful, extravagant, and even reckless, in the expenditure of money in erecting the building. This is no doubt true, as the evidence seems to show a want of competency or a degree of carelessness, if not recklessness, that we presume is scarcely paralleled in our State. They issued bonds without keeping even a memorandum of dates, amounts or number. They placed them in the hands of persons to sell, who, on the receipt of the money, made no report to any one of the amount received, the amount paid out, on what account, or to whom. The money thus received was neither paid nor reported to the treasurer of the board. None of the directors pretend to have even an idea approximating the amount of bonds issued. They acted more like insane than rational men. They sold a portion at a little over two-thirds of their par value. But conceding all this, why, in the name of reason and justice, should the bondholders be punished for the misconduct of these officers? The people of the district elected them, clothed them with power to perform the acts,—not only so, but they continued them in office, took no steps to learn whether they were abusing their power, and the tax-payers surely have no right to punish their creditors for the misdeeds of their officers.

But inasmuch as there is a portion of the eight thousand dollars levied for town purposes, in excess of six mills on the dollar for road and bridge purposes, and not required for other town purposes, that excess should be enjoined, and the court below should by an appropriate reference ascertain the amount and restrain its collection. But as to all other portions of the tax the bill is directed to be dismissed.

The decree of the Appellate Court is reversed and the cause remanded.

*Decree reversed.*

Mr. CHIEF JUSTICE DICKEY, dissenting:

I think this decree should be affirmed. The fact that the voters at a town meeting. are often a very different body of men from the tax-payers of the town, seems to be overlooked. I think also that a body of men in town meeting may act fraudulently, and in such case the courts have full power to protect from the wrongful effect of such fraud. I find nothing in the record from which it may be inferred that the defendants in error in this case are in any way doers of the wrongs they complain of. I think also, that there is no sufficient ground to presume, after one record of the proceedings of a town meeting is produced and identified, that there were two records kept. The memory of men is too unworthy of trust to be allowed to control a record of proceedings, officially kept at the time of the proceedings.