School Directors of Union School District

*v.*

School Directors of New Union School District *et al.*

*Filed at Springfield January 21, 1891.*

1. Schools—*trustees of schools—upon whom their acts are binding.* Trustees of schools represent the public in respect of all matters confided to them by law, and their action, within the scope of their authority, when acting in conformity with the law, is binding upon the public.

2. Same—*formation of new districts—powers of trustees—their duty imperative.* The acts of the trustees of schools in establishing a new district out of several other districts, and from lands in several counties and townships, under the act of 1883, is binding upon school directors of districts in their townships and the public generally, whether done voluntarily or in obedience to a writ of *mandamus.*

3. Persons seeking the formation of a new school district, who have done all the law requires of them, will not be defeated in their purpose by the neglect of the trustees of schools to perform their duties as required by law; and the refusal of the trustees to take the steps required of them will not invalidate any prior acts in that regard.

4. So the neglect of the trustees to order an election in a new district for the election of directors, at the time fixed by law, will not have the effect of destroying the district; nor will their failure to file with the county clerk a map showing the lands embraced in the new district have that effect, or prevent the directors of the new district from levying taxes therein.

5. The act of 1883, entitled "An act to provide a way by which the people of any territory lying within three or more school districts, and in three or more townships, containing not less than four hundred inhabitants, may be organized into a school district," was intended to deprive boards of trustees of all discretion in respect of the formation of districts falling within the provisions of the act.

6. Same—*school district—legality of formation—by what remedy tested.* An information in the nature of *quo warranto* is the proper remedy to test the legality of the formation of a school district, and it may be that the common law writ of *certiorari* will furnish an appropriate remedy.

7. Chancery—*jurisdiction—in respect of school matters—in case the trustees neglect their duty—as to formation of new school district.* In case trustees of schools refuse to perform the duties of their office, and the trusts reposed in them, and conspire together to defeat the formation of a new district, and to obstruct and embarrass the directors of

such district in the discharge of their duties, and to deprive them of their rights, a court of equity will have jurisdiction of a bill to enjoin the illegal acts of the trustees, and others conspiring with them, and to declare and enforce the rights of the new district.

8. The fact that the trustees of schools refuse to discharge the duties imposed on them as a trust in respect to a school house, and suffer others claiming the same to take possession of it and exercise acts of ownership, to the exclusion of the directors of the district, will give a court of equity jurisdiction of a bill filed by the school directors to settle their equitable rights in the property.

9. Same—*retaining a case for all purposes.* Where a court of chancery has once acquired jurisdiction on any ground, it will generally retain the same for the purpose of preventing multiplicity of suits, until it has done complete justice.

10. Corporations *de facto—of their powers and faculties.* A *de facto* corporation, as, a school district, exercising the functions and powers of such a body, may ordinarily sue and be sued in respect of the public rights it represents, notwithstanding irregularities in its formation. A change in a school district can not ordinarily be questioned collaterally.

11. Parties—*on mandamus—to compel formation of school districts.* On *mandamus* to compel the trustees of schools to form a union district under the act of 1883, in accordance with the prayer of petitioners to that effect, the school directors of a district affected by such action are not necessary parties, as they are not required to do any act necessary to be done to accomplish the purpose sought.

12. Mandamus—*conclusiveness of judgment—and upon whom.* A judgment in a proceeding by *mandamus,* requiring the trustees of schools of two townships to lay out a new school district under the act of 1883, is conclusive, not only as to the parties to that suit, but also upon all subordinate school officers and the public at large, and the directors of a school district affected by such judgment can not question it.

13. Injunctions—*to restrain collection of taxes—generally.* A court of equity has jurisdiction to enjoin the levy and collection of taxes by persons not authorized by law, or levied for illegal or unauthorized purposes, or when the property is not liable to the tax.

14. Same—*as to school taxes.* The powers of directors of a school district to levy school taxes are limited to the property within its boundaries at the time of the levy, and any attempt to levy a tax on property in territory detached from such district will be illegal, and may be enjoined.

15. Amendment of statutes—*of the mode—act of 1883 in respect of the formation of school districts—constitutionality.* The act of 1883, entitled "An act to provide a way by which the people of any territory lying within three or more school districts, and in three or more town-

30—135 Ill.

ships, containing not less than four hundred inhabitants, may be organized into a school district," does not profess to amend the School law by reference to its title, only, and is not therefore in violation of section 13, article 14, of the constitution.

16. One law may be amended by another without any reference to it, as any new law is in some sense amendatory of some other pre-existing law. The legislature may pass at different times several acts relating to free schools, or to different parts of the law establishing a system of free schools.

Appeal from the Circuit Court of Tazewell county; the Hon. Thomas M. Shaw, Judge, presiding.

This is a bill in chancery, filed by the school directors of New Union District No. 2, which includes territory in four townships,—*i. e.*, in township 21, north, range 4, west; township 21, north, range 5, west; township 22, north, range 4, west; and township 22, north, range 5, west, in the counties of Logan, Mason and Tazewell,—and Isaac Brown and Andrew Jacobs, tax-payers residing in said district, against the school directors of Union District No. 4, which lies in the two townships last above named, and against the county clerks of the above named counties, for injunction, and other relief.

The southern tier of sections in township 22, north, range 4, west, is in Logan county, and the same tier in township 22, north, range 5, west, is in Mason county, the county line of said counties being one mile north of the township lines. Before the formation of New Union School District No. 2, Union District No. 4 had embraced sections 19, 20, 29, 30, 31 and 32, in township 22, north, range 4, west, (the last two sections being in Logan county,) and also the east half of section 13, all of sections 23, 24, 25, 26 and 36, the east half of section 27, the south-east quarter of section 22, and the north-east quarter of section 35, in township 22, north, range 5, west. All of section 36, and the north-east quarter of section 35, were in Mason county, and the other lands were in Tazewell county. Immediately south of this district was another, called Union

District No. 2, and composed of the west half of section 7, the west half and the north-west quarter of section 6, (except twenty acres,) in township 21, north, range 4, west, all in Logan county, and all of section 1, the east half of section 2, the north-east quarter of section 11, in township 21, north, range 5, west, and the south-east quarter of section 35, in township 22, north, range 5, west, all in Mason county.

Proceedings were instituted, under the act of 1883, for the purpose of forming a new district, embracing all the lands in Union District No. 2 and lands from two other districts, one of which was Union District No. 4, the defendant, by which it is claimed that New Union District No. 2 was legally formed. The territory claimed to have been transferred from Union District No. 4 to New Union District No. 2 is section 31, the south half of section 30, and the south-west quarter of section 32, in township 22, north, range 4, west, and all of section 36, the south half of section 25, the south half of section 26, and the north-east quarter of section 35, in township 22, north, range 5, west.    There was also taken by the new district three quarters in section 12, township 21, north, range 5, west, theretofore belonging to district No. 5, in township 21, north, range 5, west.    To effect the results thus claimed, petitions were presented to the boards of trustees of schools of township 22, north, range 4, west, and township 22, north, range 5, west, to be acted on at their annual meeting, to be held April 5, 1886.    Both of these boards denied the prayer of the petition, one of them giving as a reason for so doing that it would destroy said district No. 4.    Similar petitions were presented to the other boards, viz., township 21, north, range 4, west, and township 21, north, range 5, west, to be acted on at the same meeting, and which boards granted the prayer of the petition.    The parties interested in the formation of the new district No. 2, proceeded by *mandamus,* in the circuit court of Tazewell county, to compel the boards of trustees of township 22, north, range 4, west, and township 22, north, range 5,

west, to concur with the boards of trustees of township 21, north, range 4, west, and township 21, north, range 5, west, in the formation of the new district. The two boards of trustees of township 22, north, range 4, west, and township 22, north, range 5, west, were the only defendants. A demurrer was interposed to the petition for *mandamus*, which was overruled by the circuit court, and the defendants electing to stand by their demurrer, *mandamus* was awarded. From the judgment of the circuit court awarding said writ the defendants appealed to the Appellate Court, where the judgment was affirmed, and the cause came to this court upon their further appeal, in which the judgment of the circuit court was affirmed by this court. *Trustees* v. *People*, 25 Ill. App. 25; *Trustees* v. *People*, 121 Ill. 552.

The school directors of Union District No. 4, denying the validity of the proceedings by which it was deprived of a part of its territory, insist that New Union School District No. 2 has no legal existence, and refuse to surrender to the directors of that district the school house situated upon the detached territory, have locked the doors of the same, and proceeded to exercise acts of ownership and control, by repairing the same, etc., and have assumed to levy and cause to be collected school taxes on the detached territory, for the purpose of maintaining schools in said district No. 4. The boards of trustees of township 22, north, range 4, west, and township 22, north, range 5, west, refuse to file or cause to be filed a map of said New Union District No. 2 with the county clerks of said counties, respectively, so that said clerks could not extend the taxes ordered by the directors of the new district, and neglected and refused to make return or report to the clerks the taxes levied by such directors, as required by law, and refused to recognize said district or directors thereof as having any right to collect taxes or as having any legal existence. On the hearing, the circuit court decreed in accordance with the prayer of the bill, and dismissed the cross-bill filed by the directors of Union

District No. 4, from which decree those directors have appealed to this court. The other material facts appear in the opinion.

Messrs. McCulloch & McCulloch, for the appellant:

The act of the legislature of 1883, under which the appellees claim, is unconstitutional and void, and no rights can be acquired under or by virtue of it. Const. 1870, art. 4, sec. 13; School law, chap. 122, sec. 33.

The only effect of the act of 1883 is to take away the discretionary power of the trustees in that particular class of cases.

The act of 1883 is really an amendment to section 33 of the School law, and is obnoxious to the constitutional clause referred to. *Devine* v. *Commissioners*, 84 Ill. 590; *People* v. *Wright*, 70 id. 388; *Mok* v. *Detroit Building Ass.* 30 Mich. 511.

The court below, on its equity side, had no power to grant the relief prayed for in the bill and awarded in the decree.

There can not be two distinct municipal corporations, exercising the same powers, jurisdiction and privileges, within the same territory, at the same time. This would seem a self-evident proposition. Dillon on Mun. Corp. sec. 184, and cases cited in note 4.

When, therefore, a dispute arises as to which one of the two claiming to be the corporation has that right, it can only be determined by an investigation as to which of them has title thereto by law.

But if the court of equity had the power to institute the inquiry, then the rule that the legal existence of a *de facto* corporation can not be inquired into collaterally, could not apply, for there is another rule, that before there can be a *de facto* officer of a corporation there must be a *de jure* office. Dillon on Mun. Corp. sec. 276; *Decorah* v. *Bullis*, 25 Iowa, 15; *Hildreth's Heir* v. *McIntyre's Devisee*, 1 J. J. Marsh. 206; *People* v. *White*, 24 Wend. 520; *Carleton* v. *People*, 10 Mich. 250.

But this is not the tribunal in which such questions may be tried. A court of equity will not entertain a bill for the pur-

pose of trying conflicting titles of two municipal corporations. The proper remedy in all such cases is by *quo warranto*, which is an all-sufficient remedy.    *Trumbo* v. *People*, 75 Ill. 562; *People* v. *Newberry*, 87 id. 41; *Alderman* v. *School Directors*, 91 id. 179; *People* v. *Board of Education*, 101 id. 308; *Swarth* v. *People*, 109 id. 621; *Osborn* v. *People*, 103 id. 224.

Mr. B. S. PRETTYMAN, for the appellees:.

The act of 1883 is not a new amendment to section 33, and is a valid law.    *People* v. *Wright*, 70 Ill. 396; *People* v. *Mahoney*, 13 Mich. 484; *People* v. *Hoffman*, 116 Ill. 596; *People* v. *Hazelwood*, id. 319; *Timm* v. *Harrison*, 109 id. 599.

The trustees of schools are liable for costs.    Rev. Stat. chap. 122, sec. 78; *People* v. *Wiltshire*, 92 Ill. 260; *Cassady* v. *Trustees of Schools*, 94 id. 589; *Trustees* v. *Stokes*, 3 Ill. App. 267.

Jurisdiction of a court of equity: *Smith* v. *Bangs*, 15 Ill. 400; *Leitch* v. *Wentworth*, 71 id. 147; *McCord* v. *Pike*, 121 id. 290.

Mr. JUSTICE SHOPE delivered the opinion of the Court:

This is a bill in chancery, by the school directors of New Union School District No. 2, in township 21, north, range 4, west, township 21, north, range 5, west, township 22, north, range 4, west, and township 22, north, range 5, west, in the counties of Logan, Mason and Tazewell, and Andrew Jacobs and Isaac C. Brown, tax-payers of said district, against the school directors of Union School District No. 4, the boards of trustees of schools in township 22, north, range 4, west, and township 22, north, range 5, west, and the county clerks of the counties named, for injunction, and other relief.

The principal question is as to the corporate existence of the complainant school district.    The objection made is a collateral attack upon the legality of the formation of said New Union School District No. 2.    If the complainant is a *de facto* corporation, and at the time of filing its bill was exercising the

functions and powers of such a corporate body, it is ordinarily sufficient to enable it to sue and be sued in respect of the public rights it represents, even though there may have been irregularities in its formation. (*Renwick* v. *Hall*, 84 Ill. 162.) A change in a school district can not ordinarily be questioned collaterally. (*People* v. *Newberry*, 87 Ill. 41.) A much stricter rule prevails in a direct proceeding questioning the corporate existence of the body and its right to exercise corporate functions. An information in the nature of a *quo warranto* is the proper remedy to test the legality of the formation of a school district, and it may be that the common law writ of *certiorari* will furnish an appropriate remedy. *People* v. *Newberry, supra.*

The new school district, the existence of which is denied, lies in three different counties and in four different townships, and is composed of territory taken wholly or in part from three other districts. The proceedings for its formation were taken under an act entitled "An act to provide a way by which the people of any territory lying within three or more districts and in three or more townships, containing not less than four hundred inhabitants, may be organized into a school district," in force July 1, 1883. Petitions signed by the requisite number of persons were presented in proper time to each of the four boards of trustees of the townships from which land was sought to be taken for the formation of the new district, and asking for its formation. Notices were served on the school directors of the several school districts from which the territory was sought to be detached. Two of the boards of trustees of schools,—that is, those in township 21, north, range 4, west, and township 21, north, range 5, west,—granted the prayer of the petitioners, but the two defendant boards of trustees refused the prayer, claiming, as it is said, that the act of 1883, under which proceedings were instituted, was unconstitutional and void. *Mandamus* proceedings were instituted to compel them to grant the prayer of the petitions. These two boards of trustees were made defendants thereto, but Union School

District No. 4 was not made a party, and, as we shall see, properly so, as it was not required to do anything, and could perform no act constituting or forming the new district. The defendant boards of trustees appeared, and demurred to the petition for *mandamus.* The circuit court overruled the demurrer, and entered judgment commanding the said defendants to grant the prayer of the petitions for the establishment of New District No. 2, and this judgment was affirmed by the Appellate Court and by this court. 121 Ill. 552.

If the judgment of this court affirming that of the circuit and Appellate Courts is not conclusive as to the legality of the steps taken for the formation of the new district, as against district No. 4, defendant here, it is because that district is not bound by the act of the trustees of schools, who were defendants to the said *mandamus* proceedings. It certainly is conclusive upon all parties to the suit in which it was rendered, as to all objections that might have been urged against the legality of the proceeding organizing the new school district. We are of opinion that the judgment in that case is conclusive upon all persons. The trustees of schools represent the public in respect of all matters confided to them by law, and their action, within the scope of their authority, when acting in conformity with the law, must necessarily be binding upon the public, and their acts, when done in obedience to the mandate of a court of competent jurisdiction, must have the same binding force and effect as if performed without such mandate, and upon their own motion and judgment. In the *mandamus* proceeding it was indispensable that the court, before awarding the writ, should have found that the act of 1883 was a valid law, and that the proceedings for the formation of New Union School District No. 2 was in conformity with its provisions. The formation of districts, changing their boundaries, detaching territory from one district and attaching it to another, is by the law committed to the trustees of schools. Their determination of all such matters is final and conclusive. The

discharge of this function affects the public interest, and, as before said, the school directors are bound by their action, whether it is taken on their own motion or under the mandate of a court of competent jurisdiction. In either case the directors have no discretion, but must acquiesce and accept the district thus formed. The refusal of the two boards of trustees to detach territory from district No. 4, it is apparent, was in the supposed interest of that district. But be this as it may, the judgment against the boards of trustees is binding upon the directors of Union District No. 4, the territory of which lies within townships represented by said boards, and is also binding upon the public, generally. The matter in contention affects public rights, only, and in such cases proceedings should be against those who represent and may protect those rights, or who may be required to do the particular thing demanded. The public are interested in a speedy solution and settlement of questions of this character. It can not be held, that after the legality of the formation of a school district has been settled by the courts, in a proper proceeding between proper and necessary parties, and all parties that are necessary thereto, other officers or persons to whom is confided by law no duty in respect thereof may re-litigate the same matters of public interest and concern. It can be said with equal propriety that the decision of this case will not bind the inhabitants of the school district, and that others may hereafter have the same matter re-adjudicated.

As before said, the constitutionality of the act of 1883 was necessarily involved in the case of *Trustees* v. *People*, 121 Ill. 552. But if this was not so, there can be no serious doubt of the validity of that act. Section 13, article 4, of the constitution, provides that no law shall be "amended by reference to its title only, but * * * the section amended shall be inserted at length in the new act." The act of 1883 does not profess to do that which is inhibited,—*i. e.*, to amend the School law by reference to its title, which is, "An act to estab-

lish and maintain a system of free schools." One law may be amended by another without any reference to it, as any new provision of law may in some sense be said to amend and change a prior system of laws, so that the law, as a body, is not what it was before. The legislature may declare certain acts to constitute larceny, and provide a punishment therefor different from that ordinarily inflicted for larceny, without inserting in the body of the act the Criminal Code, or incorporating in the new statute the sections defining and punishing larceny generally; and no reason is apparent why the legislature may not pass, at different times, several acts relating to free schools, or to different parts of the law establishing a system of free schools. "It can not be said that this clause of the constitution embraces every enactment which, in every degree, however remotely, may affect the prior law on a given subject, for to so hold would be to bring about a greater evil than the one sought to be obviated by this clause." (*People* v. *Wright*, 70 Ill. 396.) Two or more laws relating to the same subject, or different parts of the same subject matter, are not necessarily amendatory of each other, within the meaning of this clause of the constitution, although they may be construed together as *in pari materia*. All laws on the subject of schools, in city charters or elsewhere, are necessarily parts of the school laws. *Speight* v. *People*, 87 Ill. 595.

Various other objections are made to the sufficiency and form of the proceeding, which were settled against appellant by the judgment of this court in the *mandamus* suit before mentioned; but if they were not, they are not jurisdictional or of substantial importance, and can not therefore be considered in this collateral proceeding. It will, however, be proper to say, that the trustees of schools can take no advantage of the acts or omission of said trustees of schools in the performance of their public duty, nor can Union District No. 4 take advantage of such omission. The parties seeking the establishment of a new district, having done all that the law required

them to do, could not be prejudiced by the failure of the trustees to perform their duty in the time required by law, if they were subsequently required to act, and did act, in conformity with law, in the organization of the district. So if the school house upon the detached territory was not appraised and sold, and the proceeds divided, as is provided by law shall be done, that will not invalidate any of the prior steps taken by which the new district was organized. So, also, the neglect of the trustees to order an election in the new district for the election of directors, at the time fixed by law, will not have the effect of nullifying and destroying the formation of the district. A failure to elect officers at the proper time will not dissolve a municipal corporation, (*People* v. *Wren*, 4 Scam. 269, *Town of Mendota* v. *Thompson*, 20 Ill. 197,) and the failure of the township trustees to file with the county clerk a map showing the lands embraced in the new district will not have the effect to destroy its corporate existence, or to prevent the directors of a new district from levying taxes for school purposes therein. *Directors* v. *Directors*, 73 Ill. 250.

It is also urged that the law contemplates that the boards of trustees of the various townships shall act together or at the same time, and it is said that eighteen months practically elapsed before there was concurrence of action by the various boards of trustees in the formation of this district. This interregnum was occasioned by the refusal of two of the boards of trustees to grant the prayer of the petition, as they were required by law to do, and the necessary delay in prosecuting the *mandamus* proceeding to compel such action, through the various courts of the State. This question was also necessarily involved in the *mandamus* proceeding referred to. If their concurrence will not have the effect of forming a valid district because of the lapse of time, it can not be presumed that the circuit court would have awarded the writ, or its action would have been affirmed by this court. Indeed, if this contention could prevail, no union district could ever be formed under the

act of 1883, unless each and every of the boards of trustees readily and at once acquiesced in its formation. This law was intended to deprive boards of trustees of all discretion in respect of the formation of districts falling within the provisions of that act.

It is also contended that a court of equity has no jurisdiction to grant the relief sought by this bill. If the bill was filed for the purpose of ousting the directors of Union District No. 4 from their office, or to restrain the exercise of their corporate powers, and that only, the contention would be well founded. If the object of the bill was to deprive that district of its franchise, there would be a remedy by *quo warranto,* and a demurrer to the bill would be properly sustained. We do not, however, understand this to be the purpose of the bill, nor that its object was to establish the legality of the formation of the new district. That is treated by the bill as having been already established by the *mandamus* proceedings and subsequent action of the boards of trustees. Upon part of the territory taken from the appellant district and attached to the new district was an old school house, of the value of about $200, and a school house site, which was claimed by district No. 4 on the ground that the proceedings to establish the new district were invalid and abortive. The people of district No. 4, in electing its directors, elected one residing in that part of New Union District No. 2 which had been taken from the former district, and the directors of school district No. 4 proceeded to levy taxes in the territory detached as if it still remained a part of district No. 4 as it was before the change of its boundaries by the formation of the new district,—in other words, to levy and collect school taxes in a part of the new district No. 2, and thereby to interfere with the rights and franchises of the latter district, and embarrass its directors in the discharge of their duties. The directors of district No. 4, after the formation of the new district, had a school taught in said school house, and at its termination locked its doors and refused to

allow the directors of the new school district to have the custody or control of the same. They took the roof off the school house under claim of right to repair the same.

The bill charges fraud and conspiracy between the defendants to disregard the rights of the complainants, and shows that the defendants had and were acting in concert in attempting to obstruct and embarrass the directors of the new district; that the trustees of schools refused to make and file a map showing the territory and inhabitants embraced in said new district, so that the county clerks could not properly extend the school taxes levied by the directors of said district; that appellees caused maps of New Union School District No. 2, together with the school taxes levied by the directors of that district, to be filed with the respective county clerks, and that such clerks disregarded such levy, and proceeded to extend the school taxes levied by the directors of said school district No. 4 upon all the land and territory within the corporate bounds of said district No. 2, which previously had formed part of the said district No. 4, and refused to extend the school tax levied upon said territory by the directors of the new district.

There can be no serious doubt as to the jurisdiction of a court of equity to protect the equitable rights of the directors of the new district. The law fails to furnish an adequate remedy. The legal title to the school house and site being in the trustees of schools, they alone can sue at law. (*Wilson* v. *School Directors*, 81 Ill. 181.) It is manifest that an application to the trustees, if the allegations of the bill are true, would be unavailing. They have failed to discharge any duty in respect of this school house. It was their manifest duty to sell the same and divide the proceeds in conformity with the statute. It seems equally clear that the directors of school district No. 4 can lawfully exercise no control over the same. The rule in respect of trustees, generally, is, that where a trustee fails to discharge the duties imposed by the trust, the *cestui que trust* may have relief in a court of equity. If the

trustees of schools hold the title to the school property for parties not entitled to its use, the district or directors injured thereby can not be said to have an adequate remedy at law against the trustees of schools in their corporate capacity. The trustees are not even liable for costs when they sue or defend as school officers. In *School Directors* v. *School Directors*, 73 Ill. 249, this court held, that where an appraisement and distribution of school funds were made on the formation of a new district, and the old district refuses to pay over the proceeds to the treasurer, and the board of trustees neglects to compel such payment, the proper remedy for the new district is by bill in chancery to compel the collection of the fund, and the application thereof to its legitimate use, and to prevent its perversion. See, also, *People* v. *Wiltshire*, 92 Ill. 260; *Cassady* v. *Trustees of Schools*, 94 id. 589.

A court of chancery having acquired jurisdiction, will, generally, for the purpose of preventing multiplicity of suits, retain the same until it has done complete equity between the parties in respect of the subject matter in litigation. (*Aldrich* v. *Sharp*, 3 Scam. 261; *Martin* v. *Dryden*, 1 Gilm. 187; *Rawson* v. *Fox*, 65 Ill. 200; *Pool* v. *Docker*, 92 id. 501.) A court of equity has jurisdiction to enjoin the levy and collection of taxes when levied by persons not authorized by law, or for an illegal or unauthorized purpose, or where the property taxed is not liable to the tax. *Town of Lemont* v. *Singer & Talcott Stone Co.* 98 Ill. 94; *Gage* v. *Evans*, 90 id. 569; *Merritt* v. *Farris*, 22 id. 303; *Irvin* v. *New Orleans, St. Louis and Chicago Railroad Co.* 94 id. 105.

The power of the directors of Union District No. 4 to levy school taxes is limited to the property within its present boundaries, and any attempt to levy a school tax by them in the detached territory is illegal, and may be enjoined by any taxpayer prejudicially affected. Therefore, the decree enjoining the tax was properly entered upon complaint of the complainant tax-payers, if not on that of the directors. It is imma-

terial to the directors of district No. 4 whether their attempt to levy and collect school taxes upon lands and property lying within the new district is enjoined at a suit of tax-payers, or by the directors of schools of the new district. The fact that the school directors joined in the bill would not affect the relief sought by the tax-payers.

The cross-bill was properly dismissed. It sought to question the corporate existence of the new district and the legality of the steps taken to form the same. What has before been said need not be repeated. The corporate existence of the district can not be ·questioned collaterally, as was sought to be done by the cross-bill, but is limited to a direct proceeding instituted by the public authorities for that purpose. *Meeker* v. *Chicago Steel Co.* 84 Ill. 276; ·*Ward* v. *Farwell,* 97 id. 593; *Trumbo* v. *People,* 75 id. 561; *Renwick* v. *Hall,* 84 id. 162; *People* v. *Newberry,* 87 id. 41.

The decree of the circuit court will be affirmed.

*Decree affirmed.*