### Lawton C. Bonney v. Frank H. Sellers, Receiver, etc.

1. COURTS OF EQUITY—*Acquiring Jurisdiction Will Retain it for Ultimate Purposes of the Litigation.*—In order to take the affairs of an incorporated company out of the hands of its board of directors, to preserve and protect the property of the company pending a litigation for the benefit of its creditors, bondholders and stockholders according as their respective rights may appear upon a final hearing, it would seem

to be absolutely necessary that the court acquiring jurisdiction should draw to itself all questions relating to the ownership of and claims upon the company's property, and have the power, in its discretion, to compel the litigation of all questions pertaining to the title or liens upon such property in one court and in the principal case.

2. SAME—*Power to Retain Jurisdiction for the Purpose of Preventing a Multiplicity of Suits.*—A court of chancery having acquired jurisdiction, will generally, for the purpose of preventing a multiplicity of suits, retain the same until it has done complete equity between the parties in respect to the subject-matter of the litigation.

3. SAME—*Will Retain Jurisdiction to Afford Complete Relief to the Parties.*—It is well settled that if a court of equity acquires jurisdiction on any equitable ground, it will retain the cause and afford complete relief, although in so doing it becomes necessary to enforce purely legal rights.

**Bill for Relief.**—Intervening petition. Appeal from the Circuit Court of Cook County; the Hon. EDMUND W. BURKE, Judge, presiding. Heard in this court at the October term, 1901. Affirmed. Opinion filed January 16, 1902.

LYMAN M. PAINE, attorney for appellant.

CHARLES L. BONNEY, *amicus curiæ.*

DEFREES, BRACE & RITTER, attorneys for appellee.

MR. PRESIDING JUSTICE WINDES delivered the opinion of the court.

One Witbeck filed a bill April 14, 1900, against the Chicago General Railway Co. and others, which was subsequently amended, a receiver appointed April 17, 1900, for the company, and a preliminary injunction granted. The company and other defendants in the case prosecuted an appeal to this court from the order of injunction, on which appeal it was contended, among other things, that the bill could not be maintained as a stockholder's bill. We held to the contrary, and said that inasmuch as the substance and purport of the bill was to " prevent the mismanagement and misappropriation of the company's property and the fraudulent actions of a majority of its directors in the use of their powers," chancery had jurisdiction at the suit of a stockholder.

After the decision of that appeal William Elmer, A. M.

Briggs and A. N. Hall filed an intervening petition in said cause, in which they set up in substance, that John A. King, said Witbeck and other persons whose names were unknown, on May 4, 1899, and on other days, formed a conspiracy to injure the person, credit, character, business and property of said company and its bondholders, stockholders and creditors, and to hinder and prevent the construction of the railway of the company, to destroy the value of the railway and the shares and bonds therein, and the credit of the company, and to acquire certain stocks and bonds of the company. The petition sets out certain acts of Witbeck and King alleged to have been done pursuant to the conspiracy, among others, that Witbeck, without the knowledge or consent of the directors of the company, removed from its office a large amount of stocks, bonds and notes; that the Fort Dearborn National Bank on May 8, 1899, held a note of the company for $25,000, with $50,000 face value of the company's bonds as collateral, which note had been paid, but the bank refused to deliver up the collateral, King claiming the bonds as a reward for making loans for the bank to the company; that King is the president of said bank and Witbeck its vice-president, and that the bonds are the assets of the company. The petition prays that the receiver be directed to file his petition against Witbeck, King and the bank, to compel a delivery and restitution to the receiver of the property of the company so held by Witbeck, King and the bank, also for an accounting and injunction.

A demurrer of the receiver to this petition was overruled and the receiver directed to file petitions against Witbeck, King and the bank. Pursuant to this order the receiver, on September 25, 1901, filed two petitions, as directed by the order, and also against Lawton C. Bonney, in which it is alleged, besides the facts set up in the petition of Elmer and others above stated, the said Bonney, about February 1, 1900, executed an accommodation note for said company, of $15,000, to the National Bank of the Republic, which note was discounted by the company with the last named bank,

and the company also at the same time deposited $30,000 of its bonds with the bank as collateral; that the note was paid by the company through Witbeck, the company's president, and the note with the collateral was delivered to Witbeck, who brought suit upon the note against Bonney, claiming that he, Witbeck, was the owner of the note and collateral; also that said Bonney, prior to April 6, 1900, made another accommodation note for $20,000, payable to C. T. Boal; that the company discounted this note with Boal and deposited as collateral thereto $50,000 of the company's bonds; that this note was paid by the company through Witbeck, who took the note and collateral and brought suit on the note against said Bonney; also that two other notes made by the company, one to the Royal Trust Company, and another to E. F. Bryant, each having large amounts of the company's bonds pledged with payees for their security, were paid by the company through Witbeck, its president, who has since retained the same and claims to be the owner thereof, and refuses to deliver the same to the receiver; also, that February 1, 1900, Bonney Bros., being the appellant, and Charles L. Bonney, made their accommodation note for the company to said Witbeck for $15,000, which note was paid by the latter as president of the company, but he retains possession of and claims to be the owner thereof, and has brought suit against Bonney Bros. on the note; also that Witbeck is possessed of 537½ shares of the company's stock, which is the property of the company; that by the order appointing the receiver the company, its officers, agents and employes, were directed to turn over and surrender to the receiver all property, books, papers and documents of the company; that said Fort Dearborn Bank and King, its president, have in their possession $40,000 of the company's bonds, and the appellant has in his possession $10,000 of the company's bonds, of which they claim to be owners and refuse to deliver the same to the receiver; that King is possessed of 400 shares of the company's stock, which should be turned over to the receiver; that appellant has brought suit against the Fort Dearborn National Bank for the conversion of the company's bonds held by it.

The petitions severally pray that the matters therein alleged be investigated, and if found to be true, as alleged, that the property and assets of the company held by said Witbeck, the Fort Dearborn National Bank, King and Bonney, the appellant, respectively, be required to be turned over to said receiver, that the prosecution of the several suits against Bonney, Bonney Bros., and the Fort Dearborn National Bank be enjoined, and for general relief.

Upon a hearing of these petitions, neither of which is verified, the court ordered that the same be answered by Witbeck, the bank, King and appellant, within twenty days; that said suits at law be enjoined until the further order of the court, and that said parties be enjoined and restrained from transferring or otherwise disposing of, or from selling or assigning any of said stock, bonds or property of the company in said petitions set forth. From this order the appeal herein is taken.

The parties to this appeal have, by their respective solicitors, stipulated that the transcript of record filed in this court on the appeal of the company and against Witbeck in case No. 9949, should be considered as a part of the record in this cause; also that the appellant waives all question as to the insufficiency of the petitions herein because of lack of verification thereof, and the appellee waives all question as to the right of appeal in the cause. We have therefore considered the transcript on the former appeal referred to, and have treated the petitions herein as properly verified, and that the appellant is entitled to have his appeal considered.

The original and supplemental bill, the sufficiency of which was considered on the former appeal, among other things, alleges that the Chicago General Railway Company, when the bill was filed, was hopelessly insolvent; that its current indebtedness on open accounts and commercial paper past due exceeded $400,000, and that its liabilities were over $2,000,000; that a majority of its board of directors had mismanaged the business of the company and had entered into a fraudulent scheme, the details of which are set out

fully, to defraud its stockholders, bondholders and creditors, including the complainant in the bill, who filed it on behalf not only of himself, but of all persons interested as stockholders, bondholders or creditors of the company. It prays for relief against the fraudulent acts of the defendants, for other specific relief, for the appointment of a receiver to collect and preserve the company's property for the benefit of all parties interested, and to operate the company's railway, and for general relief.

It is thus apparent that the scope of the original and supplemental bill is administrative in its nature, and its intent is in part to take the affairs and business of the company out of the hands of its board of directors, and preserve and protect the company's property pending the litigation for the benefit of its creditors, bondholders and stockholders, according as their rights might appear on a final hearing. In order to accomplish these things it would seem absolutely necessary, the court having jurisdiction, as we held upon the former appeal; that it should draw to itself all questions relating to the ownership of and claims upon the company's property, and that the chancery court would have the power, in its discretion, to compel the litigation of all questions pertaining to the title or liens upon the company's property in one court and in the principal case. 1 Daniell's Chcy. Pldg. & Pr., pg. 330; Roseboom v. Whittaker, 132 Ill. 81–9; School Directors v. School D., 135 Ill. 464–78, and cases cited; Cook County v. Davis, 143 Ill. 151–5.

In the Roseboom case, *supra*, which was a stockholders' bill, in which a receiver was appointed to preserve the property of a corporation, the court say:

" After the aid of a court of equity has been invoked and that court has taken the assets of the insolvent into its hands, its jurisdiction becomes necessarily exclusive, and it will proceed, in administering the insolvent estate, upon the maxim that equality is equity. After that jurisdiction has attached, ordinarily, no creditor can pursue a legal remedy, at least in such way as to obtain for himself a preference."

In the School Directors case, *supra,* it is said:

" A court of chancery having acquired jurisdiction, will generally, for the purpose of preventing multiplicity of suits, retain the same until it has done complete equity between the parties, in respect of the subject-matter of the litigation."

In the Davis case, *supra*, the court say:

" It is well settled that if the court of equity acquires jurisdiction on any equitable ground, it will retain the cause and afford complete relief, although it becomes necessary to enforce purely legal rights."

It is apparent from the allegations of the petitions herein, which for the purposes of the case must be taken as true, that all the suits, the prosecution of which is enjoined by the order appealed from, involve the title to the property of the company which it is sought by the bill to preserve and protect for the benefit of all parties in interest. The appellant and Witbeck are parties to the main cause, as is also Charles L. Bonney. The Fort Dearborn National Bank and King are brought before the court by the petitions, and are not complaining. We see no reason why all these separate suits may not and can not be properly litigated in the cause. If it should be determined that the company is the owner of the several notes sued on by Witbeck, then he certainly would not be entitled to recover thereon, and if the appellant was not the owner of the bonds in the possession of the Fort Dearborn National Bank or King, certainly he could not maintain an action for their conversion; and if the company is the owner of said bonds, then they should be turned over to the receiver. In any event, if the chancery court should determine that the company did not own these bonds, the injunction order would no doubt be vacated and appellant be permitted to prosecute his suit at law.

The claim of appellant that his suit was wrongfully enjoined, because the order authorizing the receiver to file these petitions did not authorize him to file a petition against appellant, is, in our opinion, without merit. The petition was filed against appellant; the court considered it and made the order, thus approving of and ratifying the

receiver's act in that regard. This has all the force of an order of the court in the first instance, directing a petition to be filed against appellant.

If, as suggested by appellant's counsel, there are any circumstances existing why the injunction as against him is unjust or inequitable, they may be shown by answer to the petition, when, no doubt, he will be given his equitable rights. In the absence of any such showing, we can not perceive that any wrong is done appellant by the injunction order. The chancellor, in the exercise of a sound discretion, had the right to enjoin appellant's suit, and the order is therefore affirmed.