WILLIAM B. HODGE, Jr.

*v.*

JOHN LINN.

*Filed at Springfield September 30, 1881.*

1. ELECTION—*irregularities in conducting are not fatal.* Mere irregularities in conducting an election and counting the votes, not proceeding from any wrongful intent, which deprive no legal voter of his vote and do not change the result, will not vitiate the election, so as to justify the rejection of the entire poll of the town or precinct in which the irregularities occurred.

2. The failure to number the ballots cast at an election, and to count the votes in the manner required by the statute, and to string the ballots on a thread or twine in the order of their reading, and the allowance of persons not judges or clerks of the election to assist in counting the votes, and the presence of persons in the room during the count not challengers or officers, where nothing appears to show any injurious effect, or that the votes were not truly counted, will not justify the court, on a contest of the election, to exclude the entire poll and vote of a town as fraudulent and void. The rules prescribed by the statute in respect to these particulars are directory merely,— not jurisdictional or imperative.

APPEAL from the County Court of Coles county; the Hon. J. R. CUNNINGHAM, Judge, presiding.

Messrs. GOLDEN & WILKIN, and Mr. JAMES A. CONNOLLY, for the appellant:

There is a difference in setting aside an election itself and the returns of an election. Where the latter is done the election will stand, and the duty remains to ascertain from

other evidence the true state of the vote. McCrary on Elections, sec. 368.

Misconduct which does not amount to fraud, and by which no one is injured, does not vitiate the poll. *Dobyns* v. *Wendon*, 50 Ind. 298.

There must be a fraudulent transaction, and a party injured thereby. *People* v. *Cook*, 8 N. Y. 67; *Boileau's Case*, 2 Pars. 503; Brightly's Election Cases, 268.

The rules prescribed by law for conducting an election are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes, and to ascertain with certainty the result. Such rules are directory, merely, not jurisdictional or imperative. *Piatt* v. *The People*, 29 Ill. 72; *Knox County* v. *Davis*, 63 id. 405; *DuPage County* v. *Scott*, 65 id. 360; *People* v. *Cook*, 8 N. Y. 67; *Hardenburgh* v. *Farmers, etc.* 2 Green, (N. Y.) 68; *Day* v. *Kent*, 1 Oregon, 123; *Taylor* v. *Taylor*, 20 Minn. 107; *People* v. *Bates*, 11 Mich. 362; *McKinney* v. *O'Connor*, 26 Texas, 5; *Jones* v. *State*, 1 Kan. 279; *Gorham* v. *Campbell*, 2 Cal. 135; *Sprague* v. *Norway*, 31 id. 173; *Keller* v. *Chapman*, 34 id. 635; *People* v. *Shemerhorn*, 19 Barb. 540; *Juker* v. *Commonwealth*, 20 Pa. St. 493; *Carpenter case*, 2 Pars. 540; Brightly's Election Cases, 448, 449, 450.

The proceeding to contest an election is to all intents and purposes a chancery proceeding, and subject to all the rules governing the same. *Dale* v. *Irwin*, 78 Ill. 170; *Talkington* v. *Turner*, 71 id. 234.

This is a chancery proceeding, and to uphold the decree it must appear from the record that it is supported by the proofs. *Kingery* v. *Berry*, 94 Ill. 515.

Messrs. WHITEHEAD & JONES, and Mr. O. B. FICKLIN, for the appellee:

The rule in elections not governed by our statute is, that when the election is held by the proper authorities, under the forms of law, the return should not be thrown out when the

contestant will go behind the returns and show how the vote was. In doing this the ballots govern. *Kingery* v. *Berry*, 94 Ill. 515; *Beardstown et al.* v. *Virginia et al.* 76 Ill. 34.

The law holds the acts of the intruder void, both as regards the public and third persons. *The People* v. *Cook*, 14 Barb. 289, affirmed in the same case by the New York Court of Appeals, 8 N. Y. 67.

Appellee insists that a count of the votes by Greenough, Devol and Black, with an entire abdication of authority by two of the judges and the regular clerks, for the time being, and questionable conduct of the other judge, amounts to no count at all, and binds nobody. It bound nobody any more than a town meeting would answer the purposes of a general election, and their action was absolutely void. *Lippincott et al.* v. *Town of Pana*, 92 Ill. 24.

No certificate can cure this absolutely void act. *The People ex rel.* v. *The Town of Santa Anna*, 67 Ill. 57.

This court had, on three occasions, recognized the numbering of the ballots at elections, and held that where an unnumbered ballot was found enclosed in a numbered ballot, the numbered ballot should be counted and the unnumbered ballot should not, and enforced the statute requiring, where there was an excess of ballots in the box, that the unnumbered ballots should be first thrown aside to reduce the excess. *Dale* v. *Irwin*, 78 Ill. 170; *Clark* v. *Robinson*, 88 id. 498; *Webster* v. *Gilmore*, 91 id. 324.

The ballots themselves, when no fraud is shown and the ballots appear to have been preserved, are the best evidence of how the voter voted, even superior to the recollection of the voter; but this can only be held where the ballot has been honestly numbered and preserved. *Kingery* v. *Berry*, 94 Ill. 515; *Beardstown et al.* v. *Virginia et al.* 76 id. 36; *People* v. *Seaman*, 5 Denio, 409; *People* v. *Saxton*, 22 N. Y. 509.

Such irregularities as change the result or render it uncertain will render the election void. McCrary on Elections, sec. 200.

In the case of *The State* v. *Albin*, 44 Mo. 346, where the question turned upon the omission of registration, purposely, it appeared by the registrar, and it was decided, that all votes not registered were illegal under the laws of Missouri.

Whether a statute is mandatory depends on its language, and also upon its purpose as gathered from the act itself. It may be mandatory on account of the language of its enactment, and it is always mandatory when it is remedial. We contend that the statute is mandatory from its language as well as its purpose, and we regard it as having been frequently incidentally so treated by this court. *Byler et al.* v. *Asher*, 48 Ill. 101; *The People ex rel. American Central Railway* v. *Ohio Grove Town*, 21 id. 192.

The Supreme Court of Missouri has on two occasions decided that the statute of that State requiring ballots to be numbered is mandatory, so that no vote not numbered shall be counted, though the language of that statute is, if possible, more peremptory than that of this State. *West* v. *Ross*, 53 Mo. 350; *Ledbetter* v. *Hall*, 62 id. 422.

As is also the statute requiring registration, the court deciding that the vote of no unregistered person shall be counted. *State* v. *Albin*, 44 Mo. 346; *Ziegler* v. *Chapman*, 54 id. 502.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

At the general election, November 2, 1880, the appellant, William B. Hodge, Jr., was, by the board of canvassers, declared duly elected to the office of clerk of the circuit court of Clark county, a certificate of election issued to him accordingly, and he qualified and entered upon the discharge of the duties of the office. Afterward, John Linn, the appellee, instituted a proceeding to contest the election, which resulted in a finding and judgment in favor of Linn, from which this appeal is prosecuted.

The petition of Linn alleges that he received 1904 votes, and Hodge 1864 votes, exclusive of the town of Marshall, which the answer of Hodge admits.

The court below "finds that the election returns of the town of Marshall, made for clerk of the circuit court of Clark county, at the election held on the 2d day of November, 1880, are fraudulent and void," and excludes the entire vote of that town in determining that Linn was elected, and then finds "that the number of votes received by said contestant, John Linn, at said election for said office, to be 1904, and. that the number of votes received by said William B. Hodge, Jr., at said election for said office, to be 1864," showing a majority of forty for Linn, rejecting the vote of the town of Marshall. The poll book and certificate of the election officers in evidence, show that in the town of Marshall Hodge received 377 votes and Linn 268 votes, making of that vote a majority of 109 in favor of Hodge, and which would make in the whole vote, counting that of the town of Marshall, a majority of 69 in favor of Hodge. Hence the question in the case is, whether the court erred in finding that the returns from the town of Marshall were "fraudulent and void," and rejecting the vote of that town.

The main ground of complaint, with regard to the returns from the town of Marshall, will appear from the following quotation from the brief of appellee's counsel: "It is therefore insisted, that in failing to number the ballots, and in failing to draw them from the box and read them one by one, and in failing to have them tallied from the call by the clerks as read, and to have them strung in the order in which they were read, the statute has been willfully and grossly violated in its essential and mandatory provisions."

The provision of the statute is, "the clerks of election shall enter the name of the voter and his number under the proper heading in the poll books, and the judges shall indorse on the back of the ticket offered the number corres-

26—100 Ill.

ponding with the number of the voter on the poll books, and shall immediately put the ticket into the ballot-box." Rev. Stat. 1874, p. 439, sec. 55. This requirement of numbering the ballots was not obeyed, and none of the ballots were numbered. It does not appear that this was from any fraudulent purpose, or that any injurious effect has resulted. It happened in this wise: One of the judges of election stated that he had been informed by some judicial officer that the law as to numbering the ballot was unconstitutional, as violative of the secrecy of the ballot, and thereupon the judges of election assumed the prerogative to decide the law to be unconstitutional, and did not number the ballots. In this the judges of election disobeyed the statute.

But what is to be the effect? Appellee says it must be the rejection of the whole vote, because the requirement is mandatory. This would not be in accord with decisions of this court. The statute in regard to the registration of voters has much more . of .a mandatory character than this provision for numbering the ballots,—it requiring that there shall be a previous list, called "register," of electors made, and that "no vote shall be received at any State election in this State if the name of the person offering to vote be not on the said register, made on the Tuesday preceding the election," unless certain prescribed proof of the right to vote shall be made. Rev. Stat. 1874, p. 470, sec. 141. And yet it was held, in *Dale* v. *Irwin*, 78 Ill. 185, and in *Kuykendall* v. *Harker*, 89 id. 126, that on the contest of an election the votes of unregistered persons, who had voted at the election without having been registered and without having furnished proof that they were entitled to vote, as required by the registry law, should not be rejected.

As to the manner of counting, the statute provides, "and when the judges of election shall open and read the tickets, each clerk shall carefully mark down upon the tally-list the vote each candidate receives." Rev. Stat. 1874, p. 459, sec.

57.   This mode was not pursued strictly.   In the first place, the ballots were emptied from the ballot-box by one of the judges, and then counted back to ascertain, as the statute requires, whether their number corresponded with the number of the names of voters on the poll lists.   The number was found to be one, or, as some say, three short.   The two kinds of tickets of the two national parties were counted out by the judges by tens, and placed in two separate piles, in layers of ten each, the tickets having been passed through the hands of three several persons to see that all was correct. The number of votes for the respective presidential electors was by the judges given to the clerks in round numbers, and by them entered on the tally sheet.   This course was pursued down to the county ticket.   When the vote for clerk of the circuit court was reached, the tickets were read one by one, the vote for each candidate being read, the tally being kept by H. Black, a challenger, and for part of the time by Mr. Christe, one of the judges, and the result given to the clerks in round numbers by the judges, which was entered by them on the tally sheets.   The statute provision, that the ballots, after being read, shall be strung upon a strong thread or twine, in the order in which they have been read, (Rev. Stat. 1874, p. 459, sec. 59,) was not followed.

It is complained that unauthorized persons assisted in the count.   Such persons as assisted were challengers, or those admitted as such.   The statute provides that the judges of election shall allow at least one, and not more than two, legal voters of each party to the contest into the room where the election is held, to act as challengers, and that "such challengers may remain with the board of election until the votes are all canvassed and the result declared."   Rev. Stat. 1874, p. 460, sec. 64.   Black and Greenough were not challengers in the room while the votes were being received, but after the polls were closed they were chosen by different parties to attend and witness the counting.   They appear to have been

recognized and received by the judges of election as challengers. We do not admit the propriety of receiving any aid from challengers, or of the latter taking any part in the matter of counting the votes and declaring the result. This is a duty to be performed solely by the election board. Still, to receive the assistance of challengers would seem less objectionable than to admit that of others. It appears that there were in the room for a short time three or four other persons. They had no business there, and should not have been admitted, of course; but they interfered in no way, caused no disturbance or inconvenience whatever, and their presence was not objected to by any one,—no injurious effect is pretended.

Mr. Black, who appears to have been the most active in the tallying as the vote was read, was a friend and active supporter of Hodge, and in this lies the only reason for any apprehension that any peculiar injury might have been suffered by Linn from any irregularity in the case. It appears that one of the judges, Christe, commenced tallying with Black, but afterward gave it up, because he could not keep along with the call of the vote, but that he then afterward kept watch over the tallying of Black, to see that it was correct. This was such a safeguard as to render it quite improbable that there could have been any fraudulent practice by Black, even if it had been purposed. But there was no reasonable ground of suspicion of such purpose, or of any fraudulent act. Fraud is not to be imputed from mere motive for its commission. There were two persons who did not understand the manner of Black's tallying. One of the judges objected to the mode adopted of counting the vote, he preferring that it should be done by reading the tickets one by one from top to bottom, the reason which he appears to have assigned being that such would be the quicker mode. This appears to be the extent of all objection that was made at the time to the manner of the proceeding. No wrongful

purpose or conduct appears, further than in the deviation from the directions of the statute. The evidence, from all who were present at the time, shows that there was no suspicion of anything of unfairness in the count, and that they believed it to have been fairly and correctly made and declared. There is, from the evidence, no reasonable ground for belief that the votes were not truly counted as they were cast. The violations of law complained of are irregularities, not appearing to have been from any wrongful intent, or with any injurious effect to appellee. There was, in our opinion, no state of case presented to the court below which authorized the finding that the returns from the town of Marshall were "fraudulent and void," and justified the exclusion of the vote of said town.

The decision, as it seems to us, must have proceeded upon the understanding that the provisions of the statute as to the mode and manner of conducting the details of an election are mandatory, so that their mere non-observance will vitiate the election. That is certainly not the doctrine of this court. In *Piatt* v. *People*, 29 Ill. 54, it was said: "A mere irregularity in conducting an election which deprives no legal voter of his vote, and does not change the result, never has been held to invalidate an election. The rules prescribed by the law for conducting an election are designed chiefly to afford an opportunity for the free and fair exercise of the elective franchise, to prevent illegal votes, and to ascertain with certainty the result. Such rules are directory merely,—not jurisdictional or imperative."

The violation of law in that case was in not closing the polls at the hour of 5 o'clock P. M., as the statute required, but keeping and continuing them open after that hour. It was held not to invalidate the election. This case was followed in *DuPage County* v. *The People*, 65 Ill. 360, where the judges of election of a township took a recess of an hour at 12 o'clock and went home to dinner, the statute positively

forbidding an adjournment. This was held to be no ground for rejecting the entire poll of the township. In addition to the previous case, *Fry* v. *Booth,* 19 Ohio St. 25, *People* v. *Cook,* 4 Selden, 67, were referred to as sustaining the decision.

The judgment will be reversed and the cause remanded.

*Judgment reversed.*

Mr. JUSTICE SCHOLFIELD having been a voter at the poll contested, took no part in the consideration or decision of this case.