## ALEXANDER D. BLANKINSHIP

*v.*

## MOSES T. ISRAEL.

*Filed at Mt. Vernon April 22, 1890.*

1. CONTESTED ELECTION—*evidence—ballots—poll-lists—tally-sheets.* On a contest of an election the court may properly admit the ballots cast, with the poll-lists and tally-sheets, in evidence, when properly identified.

2. SAME—*numbering the ballots.* If there are more ballots found on the canvass of an election than are shown upon the poll-lists, the officers are required to reject the ballots not numbered, and if the ballots still exceed the names on the poll-lists, the ballots are to be shaken up again and ballots drawn therefrom and destroyed, without opening, until the ballots and lists correspond.

3. The number of a voter at a town election was 547, and he voted, but his ballot, by mistake, was marked 548, making two ballots of that number, and there was no ballot found numbered 547. The voter identified one of the ballots marked 548 as the one cast by him : *Held,* that the vote of the voter whose number was 547 should be counted for the person named therein as voted for.

4. The statutory requirement that the judges of election shall indorse on each ballot offered, the number corresponding with the voter on the poll-lists, is directory, only. So are those enactments which touch the recording and return of the votes received, and the manner of conducting an election in detail. While the officer may be liable for willful failure to discharge the duties imposed by the statute, the citizen is not thereby disfranchised.

5. SAME—*of the right to vote—presumption.* A person whose vote is received by the officers in charge of an election, in the absence of contrary evidence, will be presumed to have been a legal voter. The burden of proof lies on the party objecting to such vote to show that it is illegal.

6. SAME—*ballot for two persons for the same office.* A ticket cast at a town election, had, under name of the office "For assessor," the printed name of one of the candidates, and under his name was written the name of another candidate, but there was no erasure of either name : *Held,* that the ballot could not be counted for either candidate.

7. SAME—*residence of voter—removal.* The question of residence is largely a question of intention. If a person, on his removal to another State, intends to remain there, and takes his family there with him, he will have lost his residence in this State.

APPEAL from the County Court of Clay county; the Hon. B. D. MONROE, Judge, presiding.

Messrs. GRESHAM & HOFF, for the appellant:

Before the ballots are admissible in evidence there must be proof that the judges of the election complied with the statute and sealed them up. The party offering the evidence should establish the fact, not only that the ballots are genuine, but that the ballot-box and contents have not been tampered with. *People* v. *Livingstone,* 80 N. Y. 66; *Butler* v. *Lehman,* 1 Bart. 353; *Kline* v. *Vence,* id. 381; *Hudson* v. *Solomon,* 19 Kan. 171; McCrary on Elections, secs. 436-442.

Those provisions of a statute which affect the time and place of the election and the legal qualifications of the electors, are generally of the substance of the election, while those touching the recording and return of the legal votes received, and the mode and manner of conducting the mere details of the election, are directory. The principle is, that irregularities which do not tend to affect results are not to defeat the will of the majority,—the will of the majority is to be respected even when irregularly expressed. The officers of election may be liable to punishment for a violation of the directory provisions of a statute, yet the people are not to suffer on account of the default of their agents. McCrary on Elections, sec. 193; *Juker*

v. *Commonwealth,* 20 Pa. St. 493; *Carpenter's case,* 2 Pars. 540; *Morris* v. *Vanlaningham,* 11 Kan. 269.

A ballot voting for two or more for the same office, when only one office is to fill, can not be counted for any one. Mc-Crary on Elections, p. 341, par. 507; *McKinnon* v. *People,* 110 Ill. 305.

Mr. H. H. CHESLEY, and Mr. E. S. BOYLES, for the appellee.

Mr. CHIEF JUSTICE SHOPE delivered the opinion of the Court:

Appellant and appellee were candidates for assessor of Harter township, in Clay county, at the annual spring election, April 2, 1889. The election officers returned that appellee, Moses T. Israel, received for said office 290 votes, and that appellant received for the same office 291 votes, and was duly elected assessor of said township. Appellee filed his petition, in the county court of that county, to contest such election, to which answer was filed. It will be unnecessary to epitomize either the petition or answer, as it is conceded, as it must be, that they are sufficient to present the question raised and determined. At the hearing, the county court found that appellee received at said election 286 votes for said office, and that appellant received therefor, at said election, 285 votes, and no more, and by order and decree of court, appellee was declared elected to said office, and ordering appellant to pay costs, etc. Motion for new trial having been overruled, Blankinship prayed for and perfected an appeal to this court.

It is insisted by appellant that the evidence failed to show that the ballots cast at said election were so preserved as that they were admissible in evidence, and it is said that it was incumbent upon the party offering them, to show, not only that the ballots were genuine, but that the ballot-box and contents had not been tampered with. Conceding the rule contended for, we are of opinion that the court was warranted in receiving the ballots, with the poll-lists and tally-sheets, in evidence.

While it is true there were some irregularities, and a plain violation of duty on the part of the election officers, (and particularly of the town clerk,) there was no such evidence of fraud or of misconduct as should be held to exclude the evidence.

The poll-lists show that there were cast at said election 584 votes. The re-count, under the direction of the court, showed 585 ballots in the box, 584 of which were numbered, and one of which was unnumbered. This unnumbered ballot the court properly refused to count. If such ballot was in the box at the time of the canvass of the votes by the election officers, it was their duty to reject it, there being in the box 584 numbered ballots, corresponding with the number of voters on the poll-list. The unnumbered ballot found in the box was required by the statute to be rejected. Section 57 of the Election law provides the manner of canvassing the votes, and requires that the judges shall first count the whole number of ballots in the box, and "if the ballots shall be found to exceed the number of names entered on each of the poll-lists, they shall reject the ballots, if any be found, upon which no number is marked." If the number of ballots still exceeds the number of names on the poll-lists, the ballots are required to be again placed in the box, and shaken, and enough ballots drawn therefrom and destroyed, without opening, to reduce the number of ballots in the box to the number of names on the poll-lists. The presumption is that the election officers did their duty, and rejected this ballot, but failed to destroy it, and the county court properly held that it could not be counted.

The remaining controversy arises in respect of individual ballots, and which will require separate consideration.

There were found in the box two ballots numbered 548, upon one of which occurred the name of appellee for said office, and upon the other the name of appellant therefor. There were cross-objections to the counting of each of said ballots. Appellant thereupon called Samuel Enyart, who was one of the clerks of said election, and shown to be a qualified voter there-

at, who was shown what was called the duplicate ballot numbered 548, and in which appears the name of appellant for said office. The witness testified that the ticket was identical with the one, in all respects, voted by him, and that he voted at said election. Opposite the name of this witness, on the poll-lists, is the number 547; and it further appears, by the sworn returns of the tellers appointed by the court to conduct the re-count of votes, that there was no ticket in the ballot-box numbered 547. The court counted one of said tickets for appellee, but rejected and refused to count the other ticket numbered 548, in which the name of appellant appeared for said office, for appellant.

There were also found in the box two ballots numbered 501, upon each of which appeared the name of appellant for said office of assessor. Appellee objected to the counting of either of said ballots, and thereupon appellant introduced Asa Davis, who testified that he was a legal voter at said election, and voted thereat. One of said ballots numbered 501 was shown witness, and clearly and certainly identified by him as his ballot cast at said election. The poll-lists show that said Davis voted at said election, and that opposite his name, on the poll-lists, occurs the number 502 instead of 501. It was also shown that there was in the ballot-box no ballot marked 502. Thereupon the court counted one of said ballots marked 501 for appellant, but refused to count the ballot marked 501 shown to have been cast by said Davis.

We are of opinion that the court erred in refusing to count for appellant the ballots marked 548 and 501, cast, respectively, by said Enyart and Davis. These two ballots were clearly identified, at least sufficiently so, as being the ballots cast by the voters named. We held in *Hodge* v. *Linn*, 100 Ill. 397, that the requirement of the statute, that the judges of elections should indorse upon the back of the ballot offered, the number corresponding with the number of the voter on the poll-lists, was directory, only. The principle that controls in cases of

this character, which touch the recording and return of the votes received, and the mode and manner of conducting an election in detail, are to be regarded as directory to the officer. And while such officer may be liable to punishment for willful failure to discharge the duties imposed by the statute, the citizen is not thereby to be disfranchised. McCrary on Elections, 192; *Kreitz* v. *Behrensmeyer*, 125 Ill. 141.

It also appears that there was found in said box one ballot numbered 193, which was cast and duly counted for appellant, and another ballot, in respect of the numbering of which it is said by the tellers appointed by the court, that the numbering was so badly executed that it was questionable what number it was actually intended to represent. The original ballot has not been certified to this court, and we are therefore unable to determine, by inspection, what the fact is. It was, however, supposed to be numbered 193. Having accounted for the duplicate marked 548, by showing it was the ballot cast by the person opposite whose name on the poll-lists was the number 547, and for the duplicate ballot numbered 501, by showing it was cast by the person opposite whose name was 502, there remained missing from the box but one number unaccounted for, which was 561; and if the ballot supposed to be marked 193 could be counted as the ballot of the person whose name appears on the poll-lists opposite the number 561, every number on the poll-lists and in the ballot-box would be properly accounted for and be made to coincide. Opposite the number 561, on the poll-lists, occurs the name of E. E. Lewis, who was not produced as a witness. We are of opinion that the court erred in refusing to count this ballot for appellant. Conceding the number thereon can be read 193, the burden was upon contestant to show that it was an illegal ballot. Lewis having voted at this election, in the absence of any evidence to the contrary, must be presumed to have been a legal voter; and the ballot of every other voter voting at said election having been found in the box, under its proper number, or having been

accounted for, as before mentioned, and this particular ballot having passed through the hands of the judges of election, as evidenced by its·being numbered and found in the ballot-box, must be presumed to have been cast by some voter at that election. It is to be remembered that the contestant offers the ballot-box and its contents in evidence, and the burden, as aforesaid, was upon him to show the illegality of the vote. There was no other voter voting at this election who could have cast this ballot except the voter Lewis, and there was no other vote in the box that he could have cast. We are of opinion the mere fact that the judges of election made a mistake in numbering said ballot, or numbered it so that the number is illegible, can not, under the facts here shown, impeach said ballot.

The ballots numbered 37, 509 and 264, respectively, bore the name of appellee printed thereon, and under his name the name of appellant was written, the words "For Assessor" preceding both—there being no erasure of either name. Appellant offered evidence tending to show that the voters voting these ballots intended them to be cast for appellant, and the name of appellee was intended to be erased. The court properly refused to count either of these ballots. The statute provides, "if more persons are designated for any office than there are candidates to be elected, * * * such part of the ticket shall not be counted for either of the candidates." In the *Kreitz case, supra,* the statute was held to be mandatory. The same rule was announced in *Clark* v. *Robinson,* 88 Ill. 500.

It is next objected that the court erred in refusing to count the vote of Frank Jackson—ballot No. 141—cast for appellant. It appears that Jackson had formerly lived in the township, having first moved there in 1876. Subsequently he went to Indiana, where he remained six months, and returned. He lived and kept house in the township until he took his family to Missouri, in October, 1887, where he remained until August, 1888, when he again returned to the township, and has since resided there. He testifies that he did not vote or offer to

vote while he was gone; that he considered his residence to be in Flora, in said township, and that that was his voting place. About a year before moving his family to Missouri, he had been working in that State at his trade, his family remaining in Flora. He went to Missouri because he could get better wages, and finally took his family to save expense, and says: "If I could have got work or kept my job, I suppose I would have been there yet." It is shown, and not denied, that he told the witness Lentz, a relative, when he went to Missouri with his family, that he was going there to stay. We are not prepared to say, in view of this evidence, the court erred in holding that Jackson was not a qualified voter. While it is true that the question of residence is largely a question of intention, if, upon his removal to Missouri, he intended to stay there, it would necessarily follow that the intention, coinciding with the act of taking up his domicile in that State, would effect a change of residence, within the meaning of the Election law.

Some question is made in respect of other rulings of the county court, by appellee; but as no cross-errors have been assigned upon this record, such matters are not before us. We may, however, add, that in no event was there any erroneous ruling prejudicial to appellee, or which could have changed the result reached by us.

We are of opinion that the court erred in rejecting from the count of the votes cast at said election, the votes of Asa Davis, Samuel Enyart and E. E. Lewis, as before mentioned. It is manifest, that counting these votes for appellant, as should have been done, the court should have found and declared that appellee received 286 votes, only, and that appellant received 288 votes, and have decreed accordingly, and against the contestant, appellee, for costs.

For the error indicated, the judgment of the county court is reversed, and the cause remanded to that court, with instructions to render judgment in accordance with this opinion.

*Judgment reversed.*