THE PEOPLE *ex rel.* A. B. Cant *et al.* Appellees, *vs.* H. S.
Crossley *et al.* Appellants.

*Opinion filed December 17, 1913.*

1. STATUTES—*new act may adopt existing statute, or sections
thereof, by reference.* A statute may, by reference to a particular
statute or sections thereof, adopt the same, and the effect of such
adoption is to make the particular statute, or the sections thereof,
a part of the new statute as the adopted statute or sections thereof
exist at the time of their adoption, but not to include subsequent
amendments of the statute or sections adopted.

2. SAME—*effect where reference is merely to the general law
regulating subject.* Where an adopting act merely refers to the
general law regulating the subject, the reference will be regarded
as including not only the law in force at the date of the adopting
act, but also the law in force when the action is taken or proceed-
ings are resorted to which involve the application of such act.

3. SAME—*two statutes upon same subject may be valid.* The
mere circumstance that the legislature has enacted two statutes
upon the same subject and for the purpose of accomplishing the
same general result furnishes no reason why both statutes may
not be valid; and the mere fact that the later act may be repug-
nant to the spirit of the earlier act in any respect does not operate
to repeal the earlier act.

4. SAME—*effect where two statutes are in irreconcilable con-
flict.* Where two statutes upon the same subject are in such ir-
reconcilable conflict that both cannot stand, the later act, being the
last expression of the legislature, will be regarded as repealing
the earlier act by implication; but a statute will not be held to be
thus repealed unless there is no other alternative.

5. CONSTITUTIONAL LAW—*when act is valid though it modifies
prior existing statutes.* An act which is complete in itself and
does not purport, either in its title or in the body thereof, to amend
or revive any other act is valid, even though it may, by implica-
tion, modify or repeal prior existing statutes.

6. SAME—*when act is invalid as amending statute by reference
to title, only.* An act which, although complete in itself, purports
to amend or revive a prior statute by reference to its title, only, is
invalid, regardless of all other questions.

7. SAME—*when an act incomplete in itself is invalid.* An act
which is incomplete in itself and in which new provisions are com-
mingled with old ones, so that it is necessary to read the two acts
together to determine what the law is, is an amendatory act and

invalid under the constitution, and it is unimportant, in such case, that the act does not purport to amend or revive any other statute.

8. SAME—*the Township High School act of 1911 is not invalid as an amendatory act.* The Township High School act of 1911, (Laws of 1911, p. 505,) which provides for the organization of township high school districts under certain conditions, is not in violation of section 13 of article 4 of the constitution, which provides that "no law shall be revived or amended by reference to its title only, but the law revived or the section amended, shall be inserted at length in the new act."

9. SCHOOLS—*effect of the Township High School act of 1911.* The effect of the Township High School act of 1911 is to give to the people the option to proceed with the organization of a township high school district either under such law or under the general School law, whichever is best adapted to the local conditions and applicable thereto.

10. SAME—*words "contiguous and compact territory" must receive reasonable construction.* The words "contiguous and compact territory," used in section 6 of the Township High School act of 1911, must be given a reasonable construction in view of the object to be attained by the law.

11. SAME—*legal existence of a school district is not dependent upon legality of election of board of education.* The legal existence of a township high school district is not affected by the fact that the election for members of the board of education may not have been held in the manner and at the time required by law.

12. ELECTIONS—*provision for election of board within thirty days after organization of high school district is not mandatory.* The purpose of section 4 of the Township High School law of 1911, requiring the calling of an election for members of the board of education within thirty days after a favorable vote upon the organization of the district, is to procure a board of education within a reasonable time, and the mere fact that the election is not held for forty-two days after the vote on the organization of the district does not render the election invalid.

13. SAME—*ballot at first election of board of education should designate length of terms.* The ballots at the first election of the members of the board of education under the Township High School law of 1911 should designate the length of the term of office for which the several candidates are to be elected.

COOKE, C. J., and DUNN, J., dissenting.

APPEAL from the Circuit Court of Rock Island county; the Hon. F. D. RAMSAY, Judge, presiding.

A. B. JOHNSON, and J. T. & S. R. KENWORTHY, for appellants.

FLOYD E. THOMPSON, State's Attorney, and SEARLE & MARSHALL, for appellees.

Mr. JUSTICE VICKERS delivered the opinion of the court:

An information in the nature of *quo warranto* was filed in the circuit court of Rock Island county against H. S. Crossley, as president, and six other persons as members of the board of education of an alleged high school district which was organized under an act of the legislature approved on June 5, 1911. The information describes the boundaries of the high school district in question, and avers that a petition was filed in the office of the county superintendent of schools of said county on or about March 21, 1912, signed by fifty-six persons who claim to be legal voters of said territory, which said petition asked for an election to be held in said territory for the purpose of voting for or against the proposition to establish a township high school for the benefit of the inhabitants of said territory; that on the 20th of April, 1912, an election was held in said territory for the purpose of voting on said proposition, and that it was publicly declared that as a result of said election a majority of the votes cast were in favor of the establishment of the said township high school; that thereafter the county superintendent of schools of the said county called another election, to be held on the 11th day of May, 1912, for the purpose of electing a township high school board of education, and that it was thereafter published and announced that at such election H. S. Crossley had been elected president, and A. B. Taft, William Nodden, George L. Walker, C. W. Hink, Lewis Haemer and George Stange had been elected members of said board of education. The information alleges that another election was called for June 1, 1912, for the purpose of electing a

board of education for said high school district, which said second election resulted in the selection of the same persons for the same positions to which they had been elected at the previous election. It is charged in the information that the said board organized and proceeded to take options upon certain real estate on which to erect a school building, and did, as such board, levy a tax on the people of said territory for high school purposes, and employed an attorney and a secretary. The information charges that the said president and members of said board of education are usurping, without warrant or lawful authority, the said offices of president and members of said board of education of a township high school district; that said high school district has no legal existence, and that the persons asserting the right to hold the offices aforesaid are doing so without any lawful right. The validity of the high school district is attacked on the ground that the law under which the organization was effected is unconstitutional because it conflicts with section 13 of article 4 of the constitution of the State of Illinois. The information further alleges that if said act is constitutional its provisions have not been followed in organizing said district, in that the territory to be organized into said district is not contiguous and compact, as is required by said act of the legislature. The information further charges that if said alleged township high school is legally organized under a valid law, out of territory which is contiguous and compact within the meaning of said law, respondents were not legally elected president and members of the board of education, respectively, for the reason that the said first election of the president and members of said board was illegal and void, and that the said second election held on June 1 was also void because it was not held within thirty days after the vote had been taken upon the organization of the district, as is contemplated by the act of the legislature under which the organization was sought to be effected.

261 — 6

The respondents filed a plea setting out the petition for the organization of the high school district, which describes the territory as it is described in the information, and alleges that said petition was signed by fifty-seven legal voters of said territory. The plea sets out in detail all of the proceedings up to and including the election held for president and members of the board on the 11th day of May. In respect to said election it is averred in the plea that the ballot failed to state the term of years for which the said members of said township high school board were to be elected, as required by section 4 of said act, and that William Nodden, one of the members of said board, having resigned and refused to act, the county superintendent of schools called another election to be held in said territory on the first day of June, and posted ten notices of said election in ten of the most public places in said territory ten days prior to the first day of June. The plea shows that at the election held on the first day of June, H. S. Crossley was again elected president, and L. F. Haemer and William Nodden were elected members of the board for one year, George L. Walker and George Stange for two years and C. W. Hink and A. B. Taft for three years. To this plea the plaintiffs filed a demurrer. The circuit court held that the act of the legislature under which the high school district was organized was unconstitutional and void and that the said high school district was not lawfully organized. The respondents elected to stand by their plea, whereupon a judgment of ouster was rendered against them. The constitutionality of a statute being involved, respondents have perfected an appeal direct to this court.

There are three questions presented by this record: (1) Is the act of the legislature of June 5, 1911, under which this district was organized, unconstitutional? (2) If said act is a valid law, is the organization of the district in question void for want of compactness in the territory composing the same? (3) If both the foregoing questions are

answered in the negative, then the further question is presented whether the plea shows that appellants have a legal right to exercise the functions of a board of education for said district.

The constitutionality of the act of June 5, 1911, is the first question which requires our consideration. It is contended by the appellees that the act violates that portion of section 13 of article 4 of the constitution of 1870 which provides that "no law shall be revived or amended by reference to its title only, but the law revived, or the section amended, shall be inserted at length in the new act."

The title of the act in question is, "An act to authorize the organization of high school districts." (Laws of 1911, p. 505.) It contains seven sections. Section 1 provides that any school township which contains a school district having a population of 1000 or more and not exceeding 100,000 inhabitants, whether operating under the general School law or governed by virtue of a special act, may be organized into a high school district by submitting the proposition to a vote of the people at a general or special election. Section 2 provides for the presentation of a petition to the county superintendent, signed by fifty or more legal voters of the territory described in the petition, asking for an election to vote upon the question of the organization of a high school, and authorizes the county superintendent, upon the receipt of such petition, to forthwith order an election to be held for the purpose of voting for or against the proposition to establish a township high school, by posting notices for at least ten days in ten of the most public places throughout the township or territory, and prescribes the form of notice to be posted. Section 3 provides for the election to be conducted by the trustees of schools, boards of education or boards of directors designated by the county superintendent of schools and requires all returns to be made within five days, and the section prescribes the form of ballot and directs how the voter shall

mark the same. Section 4 provides for the calling of an election, to be held within thirty days after a favorable vote upon the organization of the high school district, to elect a board of education, to consist of a president and six members, and provides for the notices of said election and the form thereof. Said section provides that two of the members shall be elected for one year, two for two years and two for three years, and each year thereafter two members shall be elected to serve for three years; that the president shall be elected annually; that all subsequent elections are to be held on the second Saturday of April, annually. Sections 5 and 6 are as follows:

"Sec. 5. For the purpose of supporting a high school, the township or territory for the benefit of which a high school is established under the provisions of this act, shall be regarded as a school district, and the board of education thereof shall, in all respects, have the powers and discharge the duties of boards of education elected under the general School law.

"Sec. 6. The inhabitants of any contiguous and compact territory, whether in the same or different townships, upon a petition signed by at least fifty legal voters and an affirmative vote in such territory, may establish, in the manner provided by this act, a township high school for the benefit of the inhabitants of the territory described in the petition."

Section 7 provides the manner in which a school district, or any part thereof, adjoining a high school district organized pursuant to this act may be annexed to such high school district and become a part thereof.

This act does not purport by express language, either in its title or in the body thereof, to repeal, revive or amend any other law by a reference to its title or otherwise. In its form it is a complete and independent enactment. It provides a method by which high school districts may be organized, and may be applied under the conditions and in

the manner provided in said act without resorting to any other statute. It is true that section 5 makes such high school district, when established, a school district, and gives the board of education thereof, in all respects, the same powers and imposes the same duties as are provided for boards of education elected under the general School law. The effect of this section is to incorporate into the act all of those sections of the general School law relating to the powers and duties of boards of education as the same existed at the time the act in question was passed. This is simply the familiar legislative process of adopting certain portions of another statute by reference. It is a method of legislation which is frequently followed and has uniformly been held to be free from constitutional objections. The effect of such reference is the same as though the statute or the provisions adopted had been incorporated bodily into the adopting statute. (2 Sutherland on Stat. Const. sec. 405.) Such adoption takes the adopted statute as it exists at the time of the passage of the adopting act, and does not include subsequent additions or modifications of the statute so taken. (*Knapp* v. *Brooklyn*, 97 N. Y. 520; *Culver* v. *People*, 161 Ill. 89; *City of Charleston* v. *Johnston*, 170 id. 336; *Town of Cicero* v. *McCarthy*, 172 id. 279.) Another familiar form of adoption is where the reference is not to any particular statute or part of a statute but to the law, generally, which governs a particular subject. This court held in *Culver* v. *People, supra*, that where the adopting statute makes no reference to a particular act, by its title or otherwise, but refers to the general law regulating the subject in hand, the reference will be regarded as including not only the law in force at the date of the adopting act, but also the law in force when the action is taken or proceedings are resorted to. For a full elucidation of this doctrine and illustrative cases see Sutherland on Statutory Construction. (Vol. 2, sec. 405, *et seq.*) By reference to this act it will be seen that it provides for the

organization of high school districts in two different situations. The first is provided for in section 1. That section provides for the organization of a single school township into a high school district in which there is a school district having a population of 1000 or more and not exceeding 100,000 inhabitants. To organize under this section it is necessary that the boundaries of the high school district be made co-terminous with the school township and that there be within said school township a school district of the requisite population. When these conditions exist, a high school district may be organized by submitting the proposition to a vote, and it is immaterial whether the most populous district is governed by the general School law or by a special act. The other condition under which a high school district may be organized under this act is where the proposed territory is contiguous and compact, which may be either in the same or different townships. This is provided for in section 6 of the said act. Under either section a majority vote in the territory described in the petition determines the question whether the district shall be organized.

Sections 85 to 91, inclusive, of the act to establish and maintain a system of free schools, passed in 1909, provide methods for the organization of township high school districts under certain specified conditions and by certain procedure therein prescribed, but the situation under which a township high school may be organized, as well as the methods by which the organization is effected, is in many respects substantially different under the two acts. Thus, section 1 of the act here in question applies where it is desired to form a school township into a high school district in which there is a single district having a population of 1000 or more and not exceeding 100,000 population. No such conditions as these are provided for in the School law of 1909. Again, under the law here involved the petition is required to be presented to the county superintendent of

schools, who is designated as the person to call the election and have charge of the organization, while under the School law of 1909 the school treasurer of the township receives the petition, advertises the election and conducts the organization and the county superintendent has nothing to do with it. Under the law of 1911 the board of education consists of a president and six members, and at the first election for a board of education the statute provides that the ballot shall designate the length of the term of the members of the board. Under the law of 1909 the board of education consists of five members, all of whom are elected for the same time at the first election. The members elected determine by lot, at their first meeting, who is to serve one year, who for two years and the one who is to serve three years, and the board elected chooses its own president and secretary. Under the new law these matters, except the selection of a secretary, are all determined by the electors, and the president is elected by the voters, annually. It will thus be seen that the act of 1911 was not only designed to meet conditions which in the main are not specifically covered by the law of 1909, but it also differs materially in the manner in which the organization is effected. The conditions under which a high school district may be organized under section 6 of the law of 1911 are similar in some respects to the situation covered by section 87 of the law of 1909, but, as already pointed out, there is a marked difference between the methods to be followed in the organization under the different acts.

In addition to the differences already pointed out in respect to section 1 of the act of 1911 and the law of 1909, it may be noted that under the later act where several districts are petitioning for the organization of a high school district a majority vote in the entire territory to be erected into a high school district determines the question, whereas under section 87 of the law of 1909 it is necessary that there shall be a majority in each district or part of a dis-

trict, or in each township or part of. a township, that is included in the proposed high school district, or, in other words, under the new act the territory proposed to be erected into a high school district for the purposes of the election is regarded as the unit, while under the old law each school district or part thereof, or township or part thereof, to be included in such high school district is regarded as the unit.

There is no inconsistency in both these acts remaining in full force and effect. It is a matter of general knowledge that many township high school districts had been organized and schools established and obligations incurred therein prior to the passage of the act of 1911. In the organization as well as in the operation and maintenance of such high school districts they conformed to the old law, and this may well be supposed to have influenced the General Assembly in permitting the provisions of the act of 1909 to remain in force. But even if the act in question should be found in any respect to be repugnant in spirit to the former statute that is no reason why both may not stand. One statute is never repealed by the repugnant spirit of another. (1 Sutherland on Stat. Const. sec. 246, and cases there cited.) The mere circumstance that the legislature has enacted two statutes upon the same subject and for the purpose of accomplishing the same general result furnishes no reason why both statutes may. not be valid. The only effect is to give the citizens of the State who desire to organize high school districts an option to proceed under the particular act which seems best suited to local conditions. There is nothing new or unusual in this. We have two statutes which provide for the organization of drainage districts. Both are intended to accomplish the reclamation of swamp or overflow lands by special assessment for local benefits. Both are authorized by the same constitutional provision but differ materially in the procedure by which a district is organized. All of the law

on the subject of drainage might be put in one act, but the legislature has not seen proper to do so. When it is desired to organize a drainage district, the first question to determine is whether the organization shall be under the Farm Drainage act or under the Levee act. This question being decided, the procedure thereafter is governed by the act selected. Other illustrations of similar conditions might be given.

While we are not able to discover any such repugnancy between these statutes as to make it impossible for both of them to stand, still, even if it be conceded that such repugnancy exists, that affords no reason for holding the latest expression of the legislature invalid. Where two acts of the legislature are passed upon the same subject which are in such irreconcilable conflict that it is impossible for the courts to so construe them as to harmonize them, then the law is well established that the later act, being the last expression of the legislature, is valid and the former inconsistent act is repealed by implication. Repeals by implication are not favored by the courts, and a statute will not be held to be thus repealed unless there is no other alternative. The doctrine of repeals by implication rests upon a constructive intention of the legislature. All laws are presumed to have been passed deliberately and with a knowledge of the prior laws, and when the legislature enacts a statute that is utterly inconsistent with a former one, the intent to repeal the former law is inferred from the passage of the subsequent inconsistent one. This doctrine has often been recognized by this court, and it has frequently been held that prior statutes have been repealed by implication, (*Sullivan* v. *People,* 15 Ill. 233; *Fowler* v. *Pirkins,* 77 id. 271; *Pavey* v. *Utter,* 132 id. 489; *Cook County* v. *City of Chicago,* 167 id. 109; *People* v. *Yancey,* 167 id. 255;) and the same rule is recognized generally throughout the country. See Sutherland on Stat. Const. sec. 247, and cases there cited.

The constitutional provision under which the law in question is supposed to be invalid has several times had the consideration of this court. The first case, so far as we are advised, in which this provision was involved was *People* v. *Wright,* 70 Ill. 388. That case was disposed of by this court in 1873. Mr. Justice Scholfield, who had been a member of the constitutional convention, delivered the opinion of the court. The contention was there made, as it is here, that a certain act of the legislature in regard to the police board of the city of Chicago amended the charter of the city without inserting the sections amended at length in the new act. On page 396 it was said: "No particular section of any act purports to be amended by this act. All that can be said of it in this respect is, that by implication it amends the municipal charters of cities. It cannot be held that this clause of the constitution embraces every enactment which in any degree, however remotely it may be, affects the prior law on a given subject, for to so hold would be to bring about an evil far greater than the one sought to be obviated by this clause. Our views on this question are fully and well expressed by the Supreme Court of Michigan in *People* v. *Mahoney,* 13 Mich. 484. The court there said: 'If, whenever a new statute is passed, it is necessary that all prior statutes modified by it by implication should be re-enacted and published at length as modified, then a large portion of the whole code of laws of the State would require to be re-published at every session, and parts of it several times over, until, from mere immensity of material, it would be impossible to tell what the law was. If, because an act establishing a police government modifies the powers and duties of sheriffs, constables, water and sewer commissioners, marshals, mayors and justices, and imposes new duties upon the executive and the citizen, it has thereby become necessary to re-enact and re-publish the various laws relating to them as modified, we shall find before the act is completed that it not only em-

braces a larger portion of the laws of the State, but also that it has become obnoxious to the other provisions referred to because embracing a large number of objects but not one of which can be covered by its title. This constitutional provision must receive a reasonable construction with a view to give it effect. The mischief designed to be remedied was the enactment of amendatory statutes in terms so blind that legislators themselves were sometimes deceived in regard to their effect, and the public, from the difficulty in making the necessary examination and comparison, failed to become apprised of the changes made in the laws. An amendatory act which purported only to insert certain words or to substitute one phrase for another in an act or section which was only referred to but not' republished was well calculated to mislead the careless as to its effect, and was, perhaps, sometimes drawn in that form for that express purpose. Endless confusion was thus introduced into the law, and the constitution wisely prohibited such legislation. But an act complete in itself is not within the mischief designed to be remedied by this provision, and cannot be held to be prohibited by it without violating its plain intent.' " The foregoing language fully explains the evil at which the provision of the constitution involved was aimed and the manner in which it was intended to be remedied.

The question again came up for consideration in *Timm* v. *Harrison,* 109 Ill. 593. The sole question presented in that case was the validity of an act passed in 1883, entitled "An act to restrict the power of counties, cities, towns and villages in licensing dram-shops, to provide for granting a license to retail malt liquors separately, and for punishing persons holding such separate license, for unlawful sale and gifts." The act in question contained three sections. It prohibited the granting of licenses for dram-shops for not less than $500 per annum, and for the sale of malt liquors a license fee of not less than $150 per annum was required.

This was a radical change in the Dram-shop law of 1874, section 3 of which authorized the granting of a license by county boards for not less than $50 nor more than $300 to sell intoxicating liquors outside of incorporated cities, towns and villages and made no distinction between a license to · sell malt and other intoxicating liquors. The act made no reference whatever to the Dram-shop law of 1874. Section 2 of the new act contained the substance of section 3 of the Dram-shop act, with certain provisions added thereto, although there was nothing in the new act to indicate that the old act was being set out in the new. This was held to be unnecessary. The court followed the doctrine previously announced in *People* v. *Wright, supra,* and quoted with approval from Mr. Justice Cooley, of the Supreme Court of Michigan, in *People* v. *Mahoney, supra,* which case had been relied on by the court in the *Wright case.* Although the act of 1883 was held to effect an amendment of the Dram-shop act of 1874 without making any reference thereto, still the law of 1883 was sustained, and Mr. Chief Justice Sheldon, delivering the opinion of the court, on page 598 said: "The mischief intended to be remedied by the constitution was that of the amendment of statutes by reference to their titles only. Under the practice which had prevailed to amend a previous act merely by reference to its title, and in the insertion or striking out of certain words or the making of some substitution therein, the amendatory act, of itself, would be unintelligible, and it would require examination and comparison with the prior act to understand what the real purport of the amendatory act was, hence the constitutional inhibition that 'no law shall be revived or amended by reference to its title only;' and in remedy of the evil the further provision is, 'but the law revived, or the section amended, shall be inserted at length in the new act.' When this is done the amendatory act will be intelligible of itself, and not require going elsewhere to understand its purport. The act in question is

complete in itself and entirely intelligible, showing, of itself, just what it is, and in its enactment we are of opinion that there is no contravening of the constitutional provisions named."

The case of *School Directors* v. *School Directors*, 135 Ill. 464, presented a situation very similar to that involved in the case at bar. In 1883 the legislature passed an act providing a method for the organization of a new school district out of territory embraced in several other districts and in different townships. At the time this act went into effect there were provisions in the School law covering the subject of the formation of new school districts. The act of 1883 made no reference whatever to the previous legislation on the same subject. The validity of the act of 1883 was attacked in this court as being in violation of section 13 of article 4 of the constitution. That contention was not sustained. This court, on page 473, after quoting the clause of the constitution involved, used the following language: "The act of 1883 does not profess to do that which is inhibited,—*i.e.*, to amend the School law by reference to its title, which is, 'An act to establish and maintain a system of free schools.' One law may be amended by another without any reference to it, as any new provision of law may in some sense be said to amend and change a prior system of laws, so that the law, as a body, is not what it was before. The legislature may declare certain acts to constitute larceny, and provide a punishment therefor different from that ordinarily inflicted for larceny, without inserting in the body of the act the Criminal Code or incorporating in the new statute the sections defining and punishing larceny generally; and no reason is apparent why the legislature may not pass, at different times, several acts relating to free schools, or to different parts of the law establishing a system of free schools. 'It cannot be said that this clause of the constitution embraces every enactment which in every degree, however remotely, may affect the

prior law on a given subject, for to so hold would be to bring about a greater evil than the one sought to be obviated by this clause.' (*People* v. *Wright,* 70 Ill. 396.) Two or more laws relating to the same subject, or different parts of the same subject matter, are not necessarily amendatory of each other within the meaning of this clause of the constitution, although they may be construed together as *in pari materia.* All laws on the subject of schools, in city charters or elsewhere, are necessarily parts of the school laws.—*Speight* v. *People,* 87 Ill. 595."

The case of *People* v. *Knopf,* 183 Ill. 410, is in line with the previous cases on this subject. The situation there involved was as follows: The general Revenue law in force prior to 1898 created the office of assessor and made it his duty to assess all property under his jurisdiction. In 1898 the legislature passed "An act for the assessment of property and providing the means therefor, and to repeal a certain act therein named." This new act created a board of assessors for Cook county and imposed upon said board the duty of assessing the property which under the old law was assessable by the assessor. The office of assessor was not abolished by the new act but was expressly retained. The assessor filed a petition for *mandamus* to compel the county clerk to deliver to him the books for the assessment of property. His petition was dismissed and the case came to this court. The new act referred to a number of sections of the existing Revenue law and by adoption made them a part of the new act. The new act did not purport to amend the existing Revenue law. The validity of the new act was challenged in this court because it amended the Revenue act without inserting at length in the new act the sections amended. The contention was not sustained and the previous cases already reviewed in this court were re-examined and approved.

All of the foregoing cases, and some others not heretofore referred to by us in this opinion, were approved in the

late case of *Hollingsworth* v. *Coal Co.* 243 Ill. 98. The act there involved was what is known as the Shot-Firers act of 1907. The act was assailed as being in conflict with section 13 of article 4 of the constitution, in that it amended the statute in relation to mines and mining in force at the time. The Shot-Firers act did not give a right of action to the widow, heirs and dependents of the person killed by a willful violation of its provisions. The law could not be sustained as an amendment to the general Mining statute, because the sections of the Mining act affected were not inserted at length in the new act, but it was sustained as a separate, independent act covering the whole subject with which it purported to deal. It was held that for a violation of the Shot-Firers law the right of action was in the administrator, under the general Injuries act. In that case the court, on page 104, used the following language: "The Shot-Firers act modifies the general act by prohibiting such work by miners in mines where more than two pounds of powder is used for a single blast and in mines where gas is generated in dangerous quantities. It does not, however, purport to amend any act, but in form is a complete and independent act of legislation. It requires the employment of shot-firers under certain conditions, and fixes penalties of fine or imprisonment, or both, for any willful neglect, refusal or failure to do any of the things required by it. If the act is complete in itself without reference to the general act, it does not contravene the constitutional provision merely for the reason that it repeals, modifies or amends, by implication, the general act. Any new provision of law may in some sense be said to amend and change the prior system of laws, and whenever there is an irreconcilable conflict between two acts the later one must prevail. To the extent of the conflict the later act amends the earlier one by implication, and if the later act is not amendatory in form and perfect in itself it is not within the prohibition of the constitution. It is not necessary, when a new act

is passed, that all prior acts modified by it by implication shall be re-enacted and published at length.—*Timm* v. *Harrison,* 109 Ill. 593; *People* v. *Wright,* 70 id. 388; *School Directors* v. *School Directors,* 135 id. 464; *English* v. *City of·Danville,* 150 id. 92; *Erford* v. *City of Peoria,* 229 id. 546; 26 Am. & Eng. Ency. of Law, (2d ed.) 708."

The latest case, so far as we are advised, which involved this clause of the constitution is *People* v. *VanBever,* 248 Ill. 136. The statute there assailed was sections 168*a* and 168*b* of the Criminal Code, which were parts of an act passed in 1879, entitled "An act to amend the Criminal Code, to change the punishment of persons convicted of the crime of petit larceny and misdemeanors," etc. Sections 2 and 3 of the original act involved enlarged the punishment provided for certain offenses by permitting the court, in its discretion, to sentence the defendant to labor in the workhouse of any city, town or county where the conviction is had. These sections in no way referred to the previous existing statutes imposing punishments for misdemeanors in the Criminal Code. It is conceded by this court in its opinion that the effect of the sections assailed was to amend the previous law in relation to punishment for misdemeanors, but still it is held not to be in violation of the constitutional provision, because the act· questioned was a complete and intelligible act by itself and was therefore not in violation of the constitution.

In all of the foregoing cases the several acts of the legislature involved were held to be valid for the general reason that they did not purport, either in their respective titles or in the acts themselves, to amend any prior statute, and for the further reason that the several acts under consideration were held to be complete acts, which expressed the intention of the legislature without the necessity of reading in connection therewith any other statutory provisions in force at the time the several amendatory acts were passed. But in order to discover the test for determining

whether a statute contravenes the provision of the constitution now under consideration it is important to have before us an aspect of the rule that is illustrated by the cases of *People* v. *Knopf, supra, Badenoch* v. *City of Chicago,* 222 Ill. 71, and *O'Connell* v. *McClenathan,* 248 id. 350. These cases are ample authority for the rule that the character of an act with reference to its being amendatory or complete must be determined, not by the title, alone, nor what the act purports to be, but by an examination and comparison of its provisions with prior laws which are left in force. If the act in question is not complete within itself and it is necessary to read into the new law certain provisions of prior statutes in order to make it intelligible, and the new act is an attempt to amend the old law by intermingling new and different provisions with the old ones' or by adding new provisions, so as to create out of the existing laws and the new act together a complete act upon the subject, then the new act is held to be amendatory of the old law and the requirement of the constitution must be complied with to make it valid. The acts involved in *Badenoch* v. *City of Chicago* and *O'Connell* v. *McClenathan,* above cited, were both held to be unconstitutional because the new acts were not complete within themselves and it was necessary to resort to previous legislation upon the subject of the acts in order to understand and enforce the new acts. It was distinctly said in both of those cases, however, that the acts condemned were not complete within themselves, and that it was necessary, in order to have any intelligent understanding of them, to refer to previous legislation relating to the same subject. A careful comparison of the High School law of 1911 with the acts held invalid in the two cases last above cited will clearly show that the act assailed in this case does not belong to the class of legislation condemned in the *Badenoch* and *McClenathan* cases.

261 — 7

The case of *English* v. *City of Danville,* 150 Ill. 92, re-lied upon by appellees, is not in point. The constitutional-ity of the statute was not there involved. That case merely involved the construction of the statute but not its consti-tutionality.

From a careful consideration of the previous decisions of this court the rules to be deduced therefrom may be stated in the following propositions :

(1) An act which is complete within itself and does not purport, either in its title or in the body thereof, to amend or revive any other act, is valid even though it may by im-plication modify or repeal prior existing statutes. Statutes of this class were involved in and the rule as stated sus-tained by the following authorities : *People* v. *Wright, su-pra; Timm* v. *Harrison, supra; School Directors* v. *School Directors, supra; People* v. *Knopf, supra; Hollingsworth* v. *Coal Co. supra; People* v. *VanBever, supra.*

(2) An act, though otherwise complete within itself, which purports to amend or revive a prior statute by ref-erence to its title only, and does not set out at length the statute amended or revived, is invalid, regardless of all other questions. So far as we have been able to ascer-tain, no act of the legislature of this class has come before this court. The proposition, however, is, in our opinion, too clear to admit of controversy. It logically follows and is supported by the reasoning of the authorities cited un-der the first proposition.

(3) An act which is incomplete in itself and in which new provisions are commingled with old ones, so that it is necessary to read the two acts together in order to determine what the law is, is an amendatory act and invalid under the constitution, and it is unimportant, in such case, that the act does not purport to amend or revive any other stat-ute. This proposition is supported by *People* v. *Knopf, supra, Badenoch* v. *City of Chicago, supra,* and *O'Connell* v. *McClenathan, supra.*

With the foregoing examination of the authorities and the rules which, in our opinion, are fairly deducible therefrom, before us, the constitutional objections to the act of 1911 disappear. In the analysis already given of said act it will be seen that it comes under the first rule above stated and rests for its validity upon the authorities cited in support thereof. The act of 1911 is not invalid and the court below erred in so holding.

It is next contended that even if the law under which this district was organized is valid, the court did not err in sustaining the demurrer to appellants' plea because the territory composing said high school district is not contiguous and compact, within the meaning of section 6 of said act. Appellees have filed a map with their brief which shows the boundaries of the proposed high school district and also the boundaries of the school districts included therein. From this map it appears that the territory embraced within the high school district is contiguous,—that is, it is united or joined together. The high school district includes school districts 30, 37 and 46 and a part of districts 34 and 35. District 37 is immediately north of 46. Districts 34 and 35 are east of 37 and 46. These four districts, which constitute by far the greater portion of the high school district, may be described as an oblong rectangle, the north-west corner of which is cut off by the shore line of the Mississippi river. District 30 joins 37 and 34 and is north-east thereof. Districts 30 and 37 do not merely join at the corner but they have a common boundary for a considerable distance, and this is also true of districts 30 and 34. The word "compact" has different meanings as given by standard lexicographers, according to the subject in connection with which it is used. It is defined as meaning "closely and firmly united, as the parts or particles of solid bodies having the parts or particles packed together;" "close;" "solid;" "dense." (*People* v. *Thompson,* 155 Ill. 451.) The words "contiguous and compact," as used in our con-

stitution in reference to territory composing senatorial districts, received the consideration of this court in the case above cited, and it was held that the words did not require that the territory should be so apportioned or set apart as to make every part as near as possible to a common center. If this were the construction given to this language it would necessarily require that every high school district organized under the law would be either in the form of a square or a circle. This language must have a reasonable construction in view of the subject matter to which it is applied. Thus construed, the territory composing this district is both contiguous and compact, within the meaning of section 6.

It is finally contended in support of the judgment of the court below that appellants were not legally elected to the offices of president and members of the board of education. This contention is based on the failure to designate on ballots in the first election the length of terms of the several candidates voted for, and on the fact that the second election was not held until forty-two days after the vote had been had in favor of organizing the district. Whatever view may be taken of this question it can have no effect upon the corporate existence of the high school district. The mere mistake of the county superintendent in calling the election within the time and manner required by law would have no effect upon the legal existence of the district. The will of the people, when once legally expressed, cannot thus be set aside by any failure on the part of school officers to discharge the duties required of them under the law. (*School Directors* v. *School Directors, supra.*) The only objection made to the election of appellants at the second election is, that it was not held within thirty days after the vote had been taken upon the organization of the district. Appellees contend that the requirement that the county superintendent shall "forthwith order an election to be held within thirty days for the purpose of select-

ing a township high school board of education to consist of a president and six members," etc., is mandatory as to the time within which such election must be called, and cases are cited holding that where a statute fixes a day upon which an election is to be held it is necessary that such election be held on the day fixed by law. McCrary on Elections (sec. 161) lays down the rule that those provisions of law which fix the time and place of holding elections are to be construed as mandatory and not merely as directory. This rule cannot be questioned. The reason for it is obvious. The voter is presumed to know the law and to be informed by the law as to the time when the election is to occur. Any change from the time fixed by law might have the effect of depriving many voters of their rights. But the authorities are not in point upon the question here involved. The statute does not fix a definite day on which the first election for a high school board of education shall be held. It provides, only, that it shall be within thirty days after the vote has been taken. Whether the election was held within thirty days, or forty or fifty, could not affect the essence of the election. If the proper notice was given and the voters in fact turned out and voted, as the plea states and the demurrer admits was done in the case at bar, within a reasonable time after the vote was taken for the organization of the district, the purpose of the statute would be accomplished as fully and completely as though the election were held within thirty days. It will be noted that the statute does not in terms declare that the observance of its provisions shall be mandatory or that an election not held within the time shall be void. It merely directs that the election shall be held within thirty days. The statute on elections has many provisions in relation to the manner in which an election shall be conducted. Among others, an hour is fixed for the opening and closing of the polls. This statute has been held to be directory, and that a deviation from its terms would not vitiate the election unless it was

shown that it was fraudulently done for the purpose of depriving voters of their legal rights and unless the statute in express terms makes the hour of opening and closing the polls essential to a valid election. (*Cleland* v. *Porter,* 74 Ill. 76; McCrary on Elections, sec. 163.) The rule might be different if it were shown, affirmatively, that the votes received after the hour for closing the polls actually changed the result of the election. (*Piatt* v. *People,* 29 Ill. 54.) Where a statute imposes duties upon officials connected with the holding of an election and by express language provides that the omission to perform the same shall render the election void, then all courts are bound to enforce such statute and pronounce the election void, regardless of all considerations touching its policy or impolicy; "but if, as in most cases, the statute simply provides that certain acts or things shall be done within a particular time or in a particular manner, and does not declare that their performance is essential to the validity of the election, then they will be regarded as mandatory if they do, and directory if they do not, affect the actual merits of the election." (McCrary on Elections, sec. 225, and cases there cited.) The rule above quoted from McCrary is supported by the decisions of this court. *Hodge* v. *Linn,* 100 Ill. 397; *Blankinship* v. *Israel,* 132 id. 514.

We are inclined to the opinion that the first election was invalid, as it deprived the voters of their right to express a choice for members of the board with reference to the length of time they should severally serve, and for the further reason that there is no other means provided in the statute for determining the length of the terms of the different members of the board. But, disregarding the first election, we are of the opinion that the requirement of the statute that the election shall be called within thirty days is directory, merely, and the only purpose of the statute was to procure an election of a board of education within a reasonably speedy time after the district was organized. We

are of the opinion that the election held forty-two days after the vote was taken upon the organization of the district was a valid election, and that the appellants were duly elected to the positions which they severally claim to hold.

The judgment of the circuit court of Rock Island county is reversed and the cause is remanded to that court, with directions to overrule the demurrer to the plea, and for further proceedings not inconsistent with the views herein expressed.                    *Reversed and remanded, with directions.*

COOKE, C. J., and DUNN, J., dissenting.